**People of the State of Illinois, Plaintiff-Appellee, v. Joseph F. Rinehart, Defendant-Appellant.**

**Gen. Nos. 50,560, 50,561, 50,562 and 50,563.**

First District, First Division.

March 20, 1967.

Alfred M. Loeser and Dowdle & Moscato, of Chicago (Richard E. Dowdle, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

The defendant appeals from four convictions in which he was charged as follows:

1. Unlawful use of weapons in that he knowingly carried concealed, about his person, a .45 caliber automatic pistol while not on his land or abode, or in his fixed place of business, in violation of Ch 38, Sec 24–1 (a) (4), Ill Rev Stats (1963).

2. Unlawful use of weapons in that he knowingly carried on his person a tear gas gun projector, in violation of Ch 38, Sec 24–1 (a) (3), Ill Rev Stats (1963).

3. Falsely representing himself to be a public officer, knowing such was not the case, in violation of Ch 38, Sec 32–5, Ill Rev Stats (1963).

4. Resisting a police officer, in that he knowing the complainant to be a police officer legally authorized to perform his official duties did knowingly resist arrest, in violation of Ch 38, Sec 31-1, Ill Rev Stats (1963).

The four cases were consolidated on motion of the defendant. He pleaded not guilty to each charge and waived trial by jury. The trial judge found him guilty, sentenced him to 30 days in the County Jail of Cook County and fined him $100 on each charge. All of the sentences were to be concurrent.

Initially, we shall consider defendant's contentions with respect to the first two charges. He claimed that under the circumstances here he was exempt from prosecution for unlawful use of weapons. Defendant's motions to dismiss were overruled by the trial court. He relies solely upon the Statute to support his position. Chapter 38, section 24-2(a) sets forth specific exemptions to section 24-1(a)(3) and 24-1(a)(4) and provides as follows:

"a. Subsections 24-1(a)(3) and 24-1(a)(4) shall not apply to or affect any of the following: . . . (4) . . . watchmen, while actually engaged in the performance of the duties of their employment . . ."

There is evidence in the record that the defendant wore a blue uniform with a shoulder patch; the words on the patch were "M. Susson Police"; and he was employed by Morris Susson, a general contractor. His duties consisted of patrolling, protecting and safeguarding Mr. Susson's property. His arrest occurred at a construction site of his employer. The arresting officer, John Sbarbaro, testified that "there was no confusion in my mind who he (defendant) was. He was part of the Susson patrol, a watchman over there."

There is no evidence that the defendant was not a watchman, that he was not an employee of M. Susson

and that he was not on Mr. Susson's property and engaged in the performance of his duties at the time of his arrest.

The State argues that the burden of establishing an affirmative defense is on the defendant. This clearly negates a large body of case law and directly contravenes the provisions of chapter 38, section 3–2 which states:

> "(a) 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon.
>
> "(b) If the issue involved in an affirmative defense of proving the defendant guilty is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense."

■ The defendant properly raised the issue of exemption and the State failed to sustain its burden. The motions to dismiss the first and second charges should have been sustained.

■ With regard to the third charge against the defendant for falsely representing himself to be a public officer, we feel the evidence is insufficient to warrant a finding of guilty. Only one state witness related any testimony concerning this charge. This witness observed defendant while driving by the location where the arrest occurred. Defendant was standing near his car, which was equipped with a Mars light, and talking to someone on a motorcycle. The witness observed that defendant was wearing a uniform but he did not see a badge. Defendant was holding a clipboard in his hand. The witness turned to his two companions in the car and stated: "There is a fellow getting a ticket."

On cross-examination the witness admitted that he did not know who the defendant was talking to, whether that

person had stopped there voluntarily or not, or what was said. It was stipulated that the two companions in the car would testify to the same objective observations and would answer the same on cross-examination.

When the first police officer arrived on the scene, he found the defendant standing alongside his car and talking to a fellow employee who had a motorcycle. The arresting officer who signed the complaint testified that he knew defendant was a watchman, "part of the Susson Patrol."

Thus, the only evidence of false representation of a public officer is the witness's statement that he thought defendant was issuing a ticket to someone and the fact that defendant was wearing a uniform. There is no testimony that defendant made any oral representation that he was an officer. Defendant's actions and appearance were consistent with his job as a watchman. That defendant was a watchman is an undisputed fact in the record.

The State in its brief cites the case of Russell v. United States, 271 F 684 (9th Cir 1921), for the proposition that showing of a badge or uniform is sufficient to constitute impersonating an officer. In that case the defendant went to an apartment, showed a badge, told the occupant he was from the Federal Government and understood there was liquor on the premises. Clearly no such overt acts occurred in the instant case. (See People v. Vysther, 49 Ill App2d 223, 199 NE2d 668 (1964) for acts necessary to constitute false impersonation of an officer.) Defendant's motion to dismiss the third complaint should have been sustained.

 Under the fourth complaint, the defendant is charged with resisting a police officer in violation of chapter 38, section 31–1. The evidence here is conflicting. We are mindful of the fact that the trial court's decision as to the credibility of witnesses should not be overruled

except where there is a reasonable doubt of defendant's guilt. In People v. Green, 72 Ill App2d 63, 219 NE2d 9 (1966), the court said, at page 66:

". . . We are aware of the rule repeatedly stated by the courts that the finding of the trial court with reference to the question of credibility of the witnesses is a matter for the trial court. However, that is not an immutable rule. In People v. Reese, 34 Ill2d 77, 213 NE2d 526, the Supreme Court reversed a judgment of conviction and said:

" 'We attach a great weight to the findings of the trier of fact, including his appraisal of credibility of witnesses, but they are not conclusive and it is our duty to set a conviction aside where the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt.' "

Officer Sbarbaro testified that when he came on the scene he approached the defendant and said he was taking him to the station for questioning for impersonating a police officer. The defendant said "No, I don't believe I will come, I don't think that is the charge." Officer Sbarbaro was not sure at this time what the charge was and returned to his car to radio his superior to get a definition of what the charge was. The officer returned to the defendant but he still refused to go with the officer. Under such circumstances the defendant was justified in his reluctance to go with the arresting officer. The defendant was attempting to explain that he was a watchman and was not impersonating an officer. The police officer then radioed for assistance.

Officers Olson and Sangirardi arrived on the scene. Officers Sbarbaro and Olson testified that Officer Sangirardi told the defendant he was under arrest. However, Officer Sangirardi in his testimony stated: ". . . I got out of my car and went up to the defendant and advised him that we had received a complaint against him for

impersonating a police officer. And I asked him to come with me to the station. . . . He refused to come and said according to the law he had every right in the world to be a watchman and he was not impersonating a police officer. . . . I asked him a second time to come to the station. He said, 'No!' "

Helen Reid, a disinterested witness, testified that when the officer pulled the defendant out of his car he said "get in here" but there was no mention of arrest, and the defendant in no way resisted.

We note that Officer Sangirardi in recounting the defendant's arrest, did not testify that he told the defendant he was under arrest. Helen Reid confirmed this. The two other officers on the scene did not tell the defendant he was under arrest, but claim that Sangirardi did.

██ This conflict in the testimony of the witnesses raises serious doubt as to whether defendant was informed that he was under arrest and compels us to reach the conclusion that the State failed to sustain its burden of proving the defendant guilty of this charge beyond a reasonable doubt.

The judgment of conviction on each of the four charges is reversed.

Judgment reversed.

MURPHY, P. J. and BURMAN, J., concur.