(No. 74221▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MICHAEL S. ZAREMBA, Appellee.

*Opinion filed January 20, 1994.*

MILLER, J., dissenting.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen and Michael M. Glick, Assistant Attorneys General, of Chicago, of counsel), for the People.

Michael J. Garvey and Robert F. Stringini, both of Addison, for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The defendant, Michael Zaremba, was indicted in the circuit court of Du Page County for violating section 16—1(a)(5) of the Illinois theft statute (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(5)). Section 16—1(a)(5) states: "A person commits theft when he knowingly *** [o]btains or exerts control over property in the custody of any law enforcement agency which is explicitly represented to him by any law enforcement officer or any individual acting in behalf of a law enforcement agency as being stolen." The indictment in this case al-

leged that the defendant "knowingly obtained control over property in the custody of the Illinois State Police, being two sets of fiberglass T-tops, having a total value in excess of $300.00, which was explicitly represented to the defendant by *** a law enforcement officer of the United States, as being stolen ***." A violation of section 16—1(a)(5) involving property valued in excess of $300 is a felony offense. See Ill. Rev. Stat. 1989, ch. 38, par. 16—1(b)(4).

The defendant moved to dismiss the indictment on the grounds that section 16—1(a)(5) was unconstitutional. The defendant contended that section 16—1(a)(5) was unconstitutional on its face because it failed to require a culpable mental state and thus violated the due process clauses of the United States and Illinois Constitutions. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.) The circuit court found that section 16—1(a)(5) was unconstitutional and granted the defendant's motion to dismiss the indictment. The State appealed directly to this court pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

The issue now before this court is whether section 16—1(a)(5) violates constitutional guarantees of due process because it fails to require a culpable mental state. The defendant contends that section 16—1(a)(5) does not require a culpable mental state, and therefore it can be read to apply to conduct that is wholly innocent. By way of example, the defendant asserts that section 16—1(a)(5) would criminalize the actions of a police evidence technician who took from a police officer for safekeeping the proceeds of a theft which the police officer had recovered and which the police officer gave to the evidence technician with the representation that the goods were stolen. The defendant states that the evidence technician in his example would act knowingly in obtaining or exerting control over the property repre-

sented by the police officer to be stolen because the evidence technician would be conscious of taking the property represented to be stolen. Thus, the defendant contends, section 16—1(a)(5) would apply to the authorized conduct of the evidence technician.

The defendant argues that legislation challenged on due process grounds will be upheld only if it bears a rational relationship to a legitimate State purpose. (See *People v. Reed* (1992), 148 Ill. 2d 1, 11.) According to the defendant, because section 16—1(a)(5) can be read to apply to wholly innocent conduct, it does not bear a rational relationship to a legitimate State purpose.

We begin our analysis by noting that section 16—1(a)(5) is part of the Illinois statute defining the offense of theft. The offense of theft is defined as follows:

"§ 16—1. Theft. (a) A person commits theft when he knowingly:

(1) Obtains or exerts unauthorized control over property of the owner; or

(2) Obtains by deception control over property of the owner; or

(3) Obtains by threat control over property of the owner; or

(4) Obtains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen; and

(A) Intends to deprive the owner permanently of the use or benefit of the property; or

(B) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or

(C) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit; or

(5) *Obtains or exerts control over property in the custody of any law enforcement agency which is explicitly represented to him by any law enforcement officer or any individual acting in behalf of a law enforcement agency as*

*being stolen."* (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 16—1.

Section 16—1(a)(5) of the theft statute, the section at issue in this case, was added to the theft statute in 1989. (See Pub. Act 85—1296, eff. January 1, 1989.) The legislative debates establish that section 16—1(a)(5) was enacted for the purpose of enabling law enforcement officers to conduct undercover operations aimed at breaking up fencing operations. As explained by Representative Countryman, section 16—1(a)(5) was intended to permit police to "take merchandise *** go to these fencing operations and represent it to be stolen and of course then sell it at some greatly discounted price and be able to break up these fencing operations." 85th Ill. Gen. Assem., House Debates, June 15, 1988, at 21-22.

Central to the defendant's argument that section 16—1(a)(5) is unconstitutional is the contention that section 16—1(a)(5) does not require a culpable mental state. Accordingly, we must determine whether or not section 16—1(a)(5) requires a culpable mental state.

Our inquiry is guided by certain well-established principles. The primary rule of statutory construction is to ascertain and give effect to legislative intent. (*People v. Hare* (1988), 119 Ill. 2d 441, 447.) An inquiry into the intention of the legislature appropriately begins with the language of the statute. (*Hare*, 119 Ill. 2d at 447.) Where statutory language is clear, it will be given effect without resorting to other aids for construction. (*People v. Boykin* (1983), 94 Ill. 2d 138, 141.) However, where the language is ambiguous, it is appropriate to examine the legislative history. *Boykin*, 94 Ill. 2d at 141.

Applying these basic principles of law, we conclude that section 16—1(a)(5) cannot be read to require a culpable mental state. The language of the statute is not ambiguous. Sections 16—1(a)(1) through (a)(4) are followed by subsections (A) through (C), which explicitly define and require a criminal purpose in obtaining or

exerting control over the property of another. Since section 16—1(a)(5) follows these subsections, the mental state elements found in subsections (A) through (C) cannot be incorporated into section 16—1(a)(5). Section 16—1(a)(5) must be interpreted without reference to the culpable mental state requirements set forth in the remainder of section 16—1. Consequently, when read alone, section 16—1(a)(5) requires neither that the control over property be unauthorized nor that there be an intent to permanently deprive the rightful owner of the property at issue.

In addition to the unambiguous language of section 16—1(a)(5), we find that this court's decision in *People v. Wick* (1985), 107 Ill. 2d 62, supports our conclusion that section 16—1(a)(5) is unconstitutional. In *Wick*, this court concluded that a section of a statute defining the offense of aggravated arson was unconstitutional. The statute at issue provided that the offense of aggravated arson was committed when a person knowingly damaged a building by fire and a fire fighter or police officer was injured as a result of the fire. (See Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(3).) The court reasoned that the aggravated arson statute violated due process because it did not bear a reasonable relationship to the public interest intended to be protected by the statute. (*Wick*, 107 Ill. 2d at 67.) The court noted that the purpose of the statute was to subject arsonists to a more severe penalty when their conduct resulted in injury to a fire fighter or police officer. The statute was not reasonably related to that objective, the court found, because the aggravated arson statute did not require an unlawful purpose in setting a fire, as the definition of simple arson did. (See Ill. Rev. Stat. 1981, ch. 38, par. 20—1.) The court stated:

> "Under this statute, for example, a farmer who demolishes his deteriorated barn to clear space for a new one is liable for a Class X penalty if a

fireman standing by is injured at the scene. If the statute's purpose is to provide a severe penalty for arsonists whose conduct results in personal injury to firemen or policemen, the statute does not bear a reasonable relationship to its purpose because the penalty is not limited to arsonists. Moreover, a statute that subjects a person having no culpable intent to a Class X penalty is not a reasonable means of ensuring that arsonists are so punished." *Wick*, 107 Ill. 2d at 66.

In *Wick*, the State suggested that the elements of simple arson, including the element of culpable intent, could be implied in the aggravated arson statute, thereby saving the aggravated arson statute from unconstitutionality. This court found that such a construction was not possible, however. The court noted that such a construction of the aggravated arson statute would render much of the language of the aggravated arson statute "meaningless surplusage." *Wick*, 107 Ill. 2d at 67; Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a).

The statute here, like the statute in *Wick*, does not bear a reasonable relationship to its purpose. We note that the purpose of section 16—1(a)(5) is to enable law enforcement officers to conduct undercover operations aimed at breaking up fencing operations. Nevertheless, section 16—1(a)(5), like the aggravated arson statute in *Wick*, is not reasonably related to that purpose because, as written, it potentially subjects wholly innocent conduct to punishment. Further, we find that the mental states set forth in sections 16—1(a)(A) through (a)(C) of the theft statute cannot be implied in subsection (a)(5) because to do so would make subsections (a)(A) though (a)(C), as set forth below subsections (a)(1) through (a)(4), "meaningless surplusage."

For the above reasons, we conclude that section 16—1(a)(5) does not require a culpable mental state. Accord-

ingly, section 16—1(a)(5) is unconstitutional because it fails to require a culpable mental state and thus violates the due process clauses of the United States and Illinois Constitutions. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.) Because an effective method of breaking up fencing operations is a laudatory goal, we encourage the legislature to cure the constitutional defect of the statute as it is presently written at the earliest possible time.

We therefore affirm the judgment of the circuit court finding section 16—1(a)(5) to be unconstitutional on its face.

*Affirmed.*

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that section 16—1(a)(5) of the Criminal Code of 1961 is unconstitutional. (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(5).) In reaching this result, the court relies mainly on *People v. Wick* (1985), 107 Ill. 2d 62, and ignores two more recent decisions, *People v. Tolliver* (1992), 147 Ill. 2d 397, and *People v. Gean* (1991), 143 Ill. 2d 281, that have considerably reduced, if they have not eliminated, *Wick*'s precedential value. I would follow *Tolliver* and *Gean* and uphold the statute challenged here.

Both *Tolliver* and *Gean* involved section 4—104(a)(2) of the Illinois Vehicle Code, which proscribes the possession of a motor vehicle title without complete assignment. (Ill. Rev. Stat. 1989, ch. 95$\frac{1}{2}$, par. 4—104(a)(2).) The statute did not specify a mental state or require that the possession of the title be with a criminal purpose, yet in both cases the court held that the statute was constitutional. The court did so in *Gean* by interpreting the provision as requiring a mental state of knowledge, and in *Tolliver* by requiring that the mental state "include that the accused individual possessed the incomplete title with a criminal knowledge, in other

words, knowledge plus criminal purpose." *Tolliver*, 147 Ill. 2d at 403.

I do not see why the same result cannot be reached in this case. The mental state for all forms of theft, including the one at issue here, is knowledge (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a) ("A person commits theft when he knowingly ***")); consistent with *Tolliver*, that mental state could simply be modified to include the further requirement that a criminal purpose accompany it. This was clearly the legislature's intent in enacting the present statute, which was designed to provide law enforcement officers with an additional tool for breaking up fencing operations. The legislature believed that subsections (A), (B) and (C) of the theft statute, which set forth three alternative criminal purposes for the offense, would apply to the new measure as well. As one of the sponsors of the legislation stated, in explaining why the new provision would not apply to innocent conduct, "My understanding of the theft statute[,] Representative[,] is that, that you must obtain or exert that control with the intent to fervently [*sic*] deprive the owner of the use or benefit of that property." (85th Ill. Gen. Assem., House Debates, June 15, 1988, at 24.) Notwithstanding the error in transcription, it is clear that the legislator was referring to the criminal purposes defined in subsections (A), (B), and (C); each of those provisions contains the requirement that the offender intend to permanently deprive the owner of the use or benefit of the property. Ill. Rev. Stat. 1989, ch. 38, pars. 16—1(a)(A), (a)(B), (a)(C).

As in *Tolliver*, the validity of the statute may be sustained by incorporating a criminal purpose into its language. The limiting construction I propose is true to the legislative history of the provision. Moreover, it has the virtue of being consistent with the rule favoring an interpretation that would preserve the statute's constitu-

tionality over one that would render the provision invalid, when both constructions are possible. (*Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 312.) "[O]nce the tyranny of literalness is rejected, all relevant considerations for giving a rational content to the words become operative. A restrictive meaning for what appear to be plain words may be indicated by the Act as a whole, by the persuasive gloss of legislative history or by the rule of constitutional adjudication *** that such a restrictive meaning must be given if a broader meaning would generate constitutional doubts." *United States v. Witkovich* (1957), 353 U.S. 194, 199, 1 L. Ed. 2d 765, 769, 77 S. Ct. 779, 782.

In the present case, there appear to be ample grounds on which a trier of fact could find that the defendant possessed the requisite criminal intent. The defendant was expressly told that the property in question was stolen, and the defendant then purchased it for $20, though it was worth more than $300. This is precisely the type of conduct the legislature intended to proscribe, and to punish, by enacting section 16—1(a)(5). The majority's cramped reading of the statute only frustrates that clear goal. For the reasons stated, I believe that section 16—1(a)(5) is constitutional. I would therefore reverse the judgment of the court below and remand the matter for further proceedings.