THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SEAN MICHAEL THOENNES, Defendant-Appellant.

Fourth District No. 4—00—0776

Argued July 17, 2002.—Opinion filed October 9, 2002.—Rehearing denied November 6, 2002.

Daniel D. Yuhas and Jacqueline L. Bullard (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE TURNER delivered the opinion of the court:

In January 2000, defendant, Sean Michael Thoennes, was charged with the offense of false personation of a peace officer (720 ILCS 5/32—5.1 (West 1998)). Following a jury trial in April 2000, defendant was convicted and sentenced to 24 months' probation. On appeal, defendant argues the false-personation-of-a-peace-officer statute is unconstitutional as it is violative of substantive due process and overbroad. We affirm.

## I. BACKGROUND

In January 2000, a grand jury returned an indictment against defendant, along with his cousin, Robert Thoennes (not a party to this appeal), charging him with the offense of false personation of a peace officer, a Class 4 felony, pursuant to section 32—5.1 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/32—5.1 (West 1998)) in that he knowingly and falsely represented himself to be a peace officer of any jurisdiction by identifying himself as a police officer to Jessica Hoelscher.

A consolidated jury trial commenced in April 2000. Jessica Hoelscher testified she was driving her mother's Explorer on December 27, 1999, around midnight. Her friend, Katy Benjamin, was also in the vehicle as they headed west on College Avenue in Normal. While driving, Hoelscher noticed two males in a Camaro traveling next to them.

She indicated the two males proceeded to repeatedly speed up and slow down and later the Camaro's passenger "flipped [her] off." Upon approaching a set of railroad tracks, the Camaro swerved in front of the Explorer, and Hoelscher stated she "braked hard." Thereafter, she decided to write down the license plate number of the Camaro and report it to the police. Hoelscher then followed the Camaro to a residential neighborhood where both vehicles stopped. She indicated the passenger of the Camaro, identified as defendant, exited the vehicle and came up to her window. An "angry" conversation took place with defendant using profanities. After telling defendant and the Camaro driver, Robert Thoennes, that she wanted the license plate number, Hoelscher testified that defendant stated "he was a police officer." Hoelscher stated she disbelieved the two males were police officers and asked for proof. She stated Robert Thoennes entered his car and "pulled out what appeared to be a badge." After requesting their names, defendant responded his name was "Officer Jack Off" and made a motion as if he was masturbating. Hoelscher then drove off without getting the Camaro's license plate numbers. The occupants of the Camaro then began following the Explorer, and Hoelscher indicated she was "slightly" concerned for her safety. Hoelscher testified she was able to take down the Camaro's license plate number and call the police after the Camaro had driven into someone's yard and hit a mailbox.

Katherine Benjamin testified she was traveling with her friend Jessica Hoelscher on the night of December 27, 1999. She stated the passenger of the Camaro "flicked us off" and later the car swerved into their lane causing Hoelscher to brake. Benjamin stated Hoelscher proceeded to follow the Camaro to get the license plate number and report it to the police. Once the two vehicles stopped, defendant exited the Camaro and began yelling at them. Thereafter, all the parties involved engaged in a shouting match and traded profanities. At one point, Robert Thoennes reached into his car and quickly flashed a badge, stating he was a police officer. Benjamin indicated the shiny smooth material appeared to be a badge. She also testified defendant stated his name was "Officer Jack Off" and made a motion with his hands near his crotch. After Hoelscher and Benjamin questioned defendant's use of profanity, defendant stated he could do anything he wanted because they had "the law behind us." She also stated the driver told her and Hoelscher that they were going to spend the night in jail. After the males in the Camaro began following them, Benjamin stated she called 9-1-1 because "we didn't feel safe."

Defendant testified on his own behalf. He stated he was a passenger in a Camaro that was being followed by a Ford Explorer. After

both vehicles stopped, the occupants of both vehicles exchanged heated language. After becoming frustrated with the argument with the girls, defendant stated he and his cousin left. Thereafter, they were stopped by a Normal police officer. On cross-examination, defendant stated he did not know there was a badge in the car until the police officer asked about it.

Robert Thoennes testified that at the time of the incident he worked for Wackenhut Security. He indicated he wore a uniform and a badge while on duty. On December 27, 1999, he stated he and his cousin confronted the females in the Explorer. He began writing the Explorer's license plate number down "to kind of scare them" so they would not follow them any longer. Robert then proceeded back to the Camaro to retrieve a cell phone. He testified he held up a gold cell phone with a metallic finish and said he was calling the police. He stated he had two badges in his car that night, but he never stated he was a police officer or showed the girls a badge.

Following closing arguments, the jury returned a guilty verdict as to defendant and Robert Thoennes of false personation of a police officer. In May 2000, defendant filed a motion for new trial arguing, *inter alia*, that section 32—5.1 of the Criminal Code was unconstitutional, which the trial court denied. Thereafter, the trial court sentenced defendant to 24 months' probation.

In July 2000, defendant filed a motion to reconsider the trial court's denial of his posttrial motion alleging section 32—5.1 of the Criminal Code was unconstitutional. 720 ILCS 5/32—5.1 (West 1998). The trial court found the statute was not unconstitutional and denied defendant's motion. The trial court then reimposed defendant's sentence of 24 months' probation. This appeal followed.

## II. ANALYSIS

### A. Substantive Due Process

Defendant argues the false personation of a peace officer statute is unconstitutional because it does not require the false personation be committed for an unlawful or improper purpose which criminalizes a substantial amount of innocent conduct and violates state and federal substantive due process guarantees. We disagree.

■ All statutes are presumed constitutional. *In re R.C.*, 195 Ill. 2d 291, 296, 745 N.E.2d 1233, 1237 (2001). The party challenging the constitutionality of the statute bears the burden of clearly establishing the alleged constitutional violation. *R.C.*, 195 Ill. 2d at 296, 745 N.E.2d at 1237.

"Pursuant to its police power, the legislature has wide discretion to establish penalties for criminal offenses, but this discretion is

limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law. *In re K.C.*, 186 Ill. 2d 542, 550 (1999). When legislation does not affect a fundamental constitutional right, the test for determining whether it complies with substantive due process requirements is the rational basis test. *People v. Hamm*, 149 Ill. 2d 201, 216 (1992). Under this test, a statute will be upheld if it 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' *People v. Adams*, 144 Ill. 2d 381, 390 (1991)." *People v. Wright*, 194 Ill. 2d 1, 24, 740 N.E.2d 755, 766-67 (2000).

In *People v. Wick*, 107 Ill. 2d 62, 65-67, 481 N.E.2d 676, 678-79 (1985), the supreme court found a portion of the aggravated arson statute (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(3)) unconstitutional as it violated due process. The statute provided that a person committed aggravated arson, a Class X felony, when he knowingly damaged a building by fire and a fireman or policeman was injured while present at the scene. *Wick*, 107 Ill. 2d at 64, 481 N.E.2d at 678. The court stated, in part:

"Because aggravated arson as defined by the statute does not require an unlawful purpose in setting a fire, however, the statute as presently constituted sweeps too broadly by punishing innocent as well as culpable conduct in setting fires. Under this statute, for example, a farmer who demolishes his deteriorated barn to clear space for a new one is liable for a Class X penalty if a fireman standing by is injured at the scene. If the statute's purpose is to provide a severe penalty for arsonists whose conduct results in personal injury to firemen or policemen, the statute does not bear a reasonable relationship to its purpose because the penalty is not limited to arsonists." *Wick*, 107 Ill. 2d at 66, 481 N.E.2d at 678-79.

Similarly, in *People v. Zaremba*, 158 Ill. 2d 36, 42-43, 630 N.E.2d 797, 800 (1994), the supreme court held a portion of the theft statute did not bear a rational relationship to a legitimate state purpose. The statute in question stated a person committed theft when he knowingly exerted " 'control over property in the custody of any law enforcement agency which is explicitly represented to him by any law enforcement officer or any individual acting in behalf of a law enforcement agency as being stolen.' " (Emphasis omitted.) *Zaremba*, 158 Ill. 2d at 39-40, 630 N.E.2d at 798, quoting Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(5). The supreme court stated that, although the statute's purpose was to enable officers to conduct undercover operations to break up fencing operations, it was not reasonably related to that purpose because it could "potentially subject[ ] wholly innocent conduct to punishment." *Zaremba*, 158 Ill. 2d at 42, 630 N.E.2d at

800. For example, the court noted defendant's argument that the statute could be applied to the innocent conduct of a police evidence technician's lawful custody of known stolen property given to him by an officer for safekeeping. *Zaremba*, 158 Ill. 2d at 38-39, 630 N.E.2d at 798.

In *In re K.C.*, 186 Ill. 2d 542, 553, 714 N.E.2d 491, 497 (1999), the supreme court held sections 4—102(a)(1) and 4—102(a)(2) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/4—102(a)(1), (a)(2) (West 1996)) violated due process by "potentially punish[ing] wholly innocent conduct without requiring proof of a culpable mental state." The provisions of the Vehicle Code read, in relevant part:

"(a) It is a violation of this Chapter for:

(1) A person, without authority to do so, to damage a vehicle or to damage or remove any part of a vehicle;

(2) A person, without authority to do so, to tamper with a vehicle or go in it, on it, or work or attempt to work any of its parts, or set or attempt to set it in motion." 625 ILCS 5/4—102 (West 1996).

The supreme court, citing *Zaremba* and *Wick*, found the sections of the Vehicle Code were capable of punishing wholly innocent conduct. *K.C.*, 186 Ill. 2d at 551-52, 714 N.E.2d at 496-97. The court noted a Good Samaritan could violate the statute for entering an unlocked car to turn off the headlights, or a young ballplayer could be branded a criminal for an inadvertent line drive through the neighbor's windshield. *K.C.*, 186 Ill. 2d at 552-53, 714 N.E.2d at 497.

■ In the case *sub judice*, section 32—5.1 of the Criminal Code states "[a] person who knowingly and falsely represents himself to be a peace officer of any jurisdiction commits a Class 4 felony." 720 ILCS 5/32—5.1 (West 1998). The statute exists to protect "citizens who would be harmed or deceived by those acting under the color of authority." *People v. Ellis*, 296 Ill. App. 3d 862, 866, 696 N.E.2d 1, 3 (1998). However, this is not necessarily the sole purpose of the statute nor does it require the possibility of harm to a citizen for an offender to be guilty of the crime. *People v. Reyes*, 328 Ill. App. 3d 918, 929, 768 N.E.2d 374, 384 (2002). It is clear the legislature's purpose in enacting section 32—5.1 was to prevent the public from being deceived into believing an individual who represents himself to be a peace officer has the authority to act in an official capacity when no such authority exists. This is so even if the impersonator has no criminal purpose in mind.

A person who knowingly and falsely represents himself to be a peace officer can potentially create a dangerous situation for the unknowing public. For example, a motorist who has just witnessed a serious accident may request assistance from an impersonator believ-

ing the impersonator has the capacity to call immediately for emergency services. If the actions of the impersonator in receiving the request for assistance would reasonably lead the motorist to believe the impersonator was a peace officer, a violation would have occurred. The unsuspecting motorist might well go on her way believing that her request for assistance has been acted upon.

 We are unpersuaded by defendant's argument that the statute potentially allows for punishment of innocent conduct. By way of example, defendant argues that an actor playing the role of a peace officer in a movie or a person masquerading as a peace officer at a Halloween party could potentially be charged under the statute. We disagree. The statute allows for criminal prosecution only if a person *"knowingly* and *falsely* represents himself to be a peace officer."(Emphasis added.) 720 ILCS 5/32—5.1 (West 1998). The cardinal rule of statutory construction is to give effect to the language and intent of the legislature. *People v. Hicks*, 164 Ill. 2d 218, 222, 647 N.E.2d 257, 259 (1995). In determining legislative intent, words in the statute are to be given their plain and ordinary meaning. *Hicks*, 164 Ill. 2d at 222, 647 N.E.2d at 259. Thus, a court must consider every statutory provision and attach a reasonable meaning to every word or phrase. *In re S.P.*, 323 Ill. App. 3d 352, 357, 751 N.E.2d 1270, 1274 (2001). The legislature chose to use the words "knowingly and falsely" in conjunction. Section 4—5 of the Criminal Code states:

"A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct.

Conduct performed knowingly or with knowledge is performed wilfully, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning." 720 ILCS 5/4—5 (West 1998).

We further note that a plain and ordinary definition of "false" is "tending to deceive or mislead; deceptive." Webster's College Dictionary 469 (2d ed. 1997). An actor or Halloween masquerader, contrary to defendant's assertion, does not knowingly and falsely represent himself to be a peace officer. There is no conscious intent on either's part to deceive the public that they are acting in the official capacity of a police officer. Our interpretation of the statute is

consistent with and furthers three important rules: "(1) a court must ascertain and give effect to the legislature's intent in enacting the statute [citation]; (2) in construing a statute, this court has a duty to affirm the statute's validity and constitutionality if reasonably possible [citation]; and (3) an interpretation that renders a statute valid is always presumed to have been intended by the legislature [citation]." *People v. Bailey*, 167 Ill. 2d 210, 225, 657 N.E.2d 953, 960-61 (1995). Accordingly, we hold the statute does bear a reasonable relationship to the public interest served, and the means adopted are reasonable to accomplish the desired objective.

Our holding is not inconsistent with *People v. Rinehart*, 81 Ill. App. 2d 125, 128-29, 225 N.E.2d 486, 488-89 (1967). In that case, a watchman, wearing a uniform, was standing near his car, which was equipped with Mars lights. Although his appearance may have given the impression that he was a peace officer, he did not knowingly and falsely represent himself to be one. Hence, a conviction under section 32—5.1 could not stand. *Rinehart*, 81 Ill. App. 2d at 129, 225 N.E.2d at 488-89.

### B. Overbreadth Doctrine

Defendant also argues section 32—5.1 of the Criminal Code violates the constitutional guarantees of freedom of expression because it is overbroad. We disagree.

■ "The doctrine of overbreadth is designed to protect first amendment freedom of expression from laws written so broadly that the fear of punishment might discourage people from taking advantage of that freedom." *People v. Anderson*, 148 Ill. 2d 15, 26, 591 N.E.2d 461, 466 (1992), citing *Broadrick v. Oklahoma*, 413 U.S. 601, 611-12, 37 L. Ed. 2d 830, 839-40, 93 S. Ct. 2908, 2915-16 (1973), and *Gooding v. Wilson*, 405 U.S. 518, 521, 31 L. Ed. 2d 408, 413, 92 S. Ct. 1103, 1105 (1972). The United States Supreme Court has stated that " 'particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' " *Hill v. Colorado*, 530 U.S. 703, 732, 147 L. Ed. 2d 597, 621, 120 S. Ct. 2480, 2498 (2000), quoting *Broadrick*, 413 U.S. at 615, 37 L. Ed. 2d at 842, 93 S. Ct. at 2918. The doctrine is used sparingly, and an overbreadth challenge may be made "only if the statute is one that may inhibit the exercise of rights of expression or association protected by the first amendment." *Bailey*, 167 Ill. 2d at 226, 657 N.E.2d at 961.

■ We reject defendant's argument that the effect of the statute's "sweeping" language is to ban the impersonation of a peace officer "regardless of the individual's motivation for doing so." As stated

previously, the statute's language requires a person to *"knowingly* and *falsely"* (emphasis added) represent himself to be a peace officer. 720 ILCS 5/32—5.1 (West 1998). The legislature has a legitimate interest in preventing the public from being deceived by such an individual. Defendant's argument that the statute will have a chilling effect on innocent conduct is based on broad speculation and fails to consider the meaning of the statutory language and its purpose. Section 32—5.1 is not so broadly drafted that possible unconstitutional applications are real and substantial. Thus, defendant's argument must fail as section 32—5.1 is not unconstitutionally overbroad, and his conviction must be upheld.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, P.J., and STEIGMANN, J., concur.