2026 IL App (1st) 240442-U

No. 1-24-0442

Order filed April 10, 2026

SIXTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 03944 |
| | ) | |
| JEFFREY MILLER, | ) | Honorable |
| | ) | Paul S. Pavlus, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's convictions for false personation of a peace officer where the evidence was sufficient to prove him guilty beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Jeffrey Miller was found guilty of two counts of false personation of a peace officer and sentenced to 18 months' probation. On appeal, defendant contends that the trial evidence was insufficient to show that he knowingly and falsely represented himself as a peace officer. We affirm.

¶ 3    Defendant was charged with two counts of false personation of a peace officer (720 ILCS 5/17-2(b)(3) (West 2022)) for knowingly and falsely representing himself to Matthew Nguyen and Lina Wang to be a peace officer on or about February 7, 2023.

¶ 4    Before trial, defendant filed a motion to bar "any interpretation by [a] Mandarin interpreter" of a video recording of Wang's out-of-court statements, arguing that such interpretation would be inadmissible hearsay, inherently unreliable, and prejudicial. Defendant further argued that the "evidence needs to come from the witness on the witness stand and any out of court witness statements should not be allowed into evidence." At the motion hearing, the State argued that the video-recorded statements that would be at issue at trial were made by defendant in English. According to the State, Wang's statements in the video would not be translated at trial as the video "speaks for itself." The court denied the motion.

¶ 5    At trial, Nguyen testified that he owned the Nail Essence Salon and Spa (Nail Essence) in Morton Grove, Illinois. He was working at Nail Essence at about 4:20 p.m. on February 7, 2023, when defendant, whom Nguyen identified in court, entered the salon. Nguyen had not seen defendant before that day. Defendant did not have an appointment but asked for a basic manicure. As it was a busy time, Nguyen told defendant that he would have to wait 45 minutes to an hour. Defendant then asked if the salon performed pedicures, and Nguyen replied that it did. Defendant showed one of his bare feet, asking if the salon used a razor blade during pedicures. Nguyen replied that the salon did not as it was "outlawed." Nguyen testified that using a razor blade in a pedicure carried a $5,000 fine and possible loss of license, but some salons did it anyway. Defendant insisted that he previously had a pedicure with a razor blade, and Nguyen repeated that the salon did not provide that service.

¶ 6    Defendant then gave a "nod of acknowledgment like he understood the rule," and "pulled up his right side belt and showed [Nguyen] a badge." Nguyen believed this was a "surprise inspection," a "serious" matter that gave him pause. He did not request defendant's credentials but repeated "sir, we don't." Defendant asked about a nearby foot massage parlor, Foot Massage. Nguyen, reasoning that defendant could receive a foot massage and return to Nail Essence in an hour or less, told defendant that "Lisa" provided good service at Foot Massage and suggested that defendant then return to Nail Essence for his manicure. Defendant agreed and provided Nguyen the name Jeffrey and a telephone number before leaving. About an hour later, Nguyen received a telephone call from "Jeffrey Miller," stating that he "will keep that appointment," and defendant returned to Nail Essence.

¶ 7    Nail Essence had a security video system and, at trial, Nguyen identified three video still images as being from that system: two images of Nguyen with defendant "flashing his badge" and a closeup image of Nguyen holding his cellphone showing the name Jeffrey Miller, a telephone number, and the date. The images were admitted into evidence over defendant's objection but are not included in the record on appeal.

¶ 8    When defendant returned to Nail Essence, he received a manicure. Worried that defendant "flashed" a badge and had inquired about an illegal procedure, Nguyen listened for any conversation between defendant and the manicurist so Nguyen could intervene if "the line of questioning *** about my shop goes wrong." When defendant said that he trained dogs and worked with law enforcement, Nguyen asked where he worked. Defendant denied working for Morton Grove or any nearby community, but said something about a "county." Nguyen said, "[t]hank you for your service and please be safe." Defendant paid for his manicure and left. Later, Nguyen told Morton Grove police about his interaction with defendant and provided video of the interaction.

¶ 9     On cross-examination, Nguyen testified that the security video from Nail Essence lacked audio and the police took still images from the video, which he believed was no longer stored on his system. Nguyen clarified that, when defendant "flashed" the badge, defendant briefly moved aside some clothing and the badge became visible, but defendant did not remove the badge or bring it closer to Nguyen. Nguyen did not know the kind of badge that defendant flashed, but it conveyed "some sense of authority." Defendant did not say he was a police officer or request free services, but he did say he was "on duty" and mentioned something about a county. Defendant did not represent himself as associated with a particular village, state, or federal agency.

¶ 10     On redirect examination, Nguyen reiterated that defendant said he was on duty. During their interaction, defendant frequently listened to something that sounded to Nguyen like a police scanner. On recross-examination, Nguyen testified that he heard sound like a police scanner coming from defendant but did not see the device producing it.

¶ 11     Lisa Yang testified, through an interpreter, that she managed Foot Massage salon and Wang was an employee. Foot Massage had an operational security video system. At trial, Yang viewed a video, identified it as a recording of Foot Massage from that system from 5:29 p.m. on February 7, 2023, and identified a woman on the video as Wang. Yang confirmed that she gave a copy of the video to the Morton Grove police. The video was admitted into evidence, over defendant's objection "based on" his pretrial motion, and it is included in the record on appeal.

¶ 12     This court has viewed the Foot Massage video, depicting the interior of the salon with Wang at the counter. Someone offscreen says "10-4 Victor 7." Then, defendant enters the frame holding a device and tells Wang, "I need to see your license." Defendant wears a black jacket and black pants. He removes an object about the size of his palm from underneath his jacket and displays it to Wang for about two seconds. After repeatedly demanding to see a massage license,

with police radio traffic audible in the background, defendant tells Wang, "I'm just going to call and have everything shut down." While holding a device, defendant says, "57 Victor, there is no massage license, nothing on the wall." After some audible police radio traffic, defendant tells Yang, "Illinois State Police, you need a massage license or we're going to shut you down. We're going to close you down. I'll come back tomorrow. But I need to see those licenses." Defendant tells Wang that giving anything other than a foot massage is illegal and "if I catch you doing it again, I'm going to shut you down."

¶ 13    Morton Grove police detective Ryan Corcoran testified that he interviewed Nguyen at Nail Essence and Wang at Foot Massage, and each showed him security video from February 7, 2023. Wang had "limited" English fluency. From the interviews and viewing the videos, Corcoran identified a suspect, "Jeffrey Miller," but was uncertain whether that person was actually a member of law enforcement. Corcoran's online searches found a "Jeffrey Miller" whose photograph matched the man in the videos and whose business telephone number, registered to North Shore Canine Kennel, matched the number Nguyen provided.

¶ 14    Corcoran called that number and did not identify himself as a police officer, but asked about the dog kennel and training business. Corcoran mentioned that the business's website had "a lot of blue lives matter flags" and asked Miller if he was in law enforcement. Miller replied that he was "in law enforcement for over 30 years and Homeland Security." After the call, Corcoran learned that Miller did not work for Homeland Security. Some days later, Corcoran called the same number and identified himself as a police officer. Recognizing the voice of the man he spoke with earlier, Corcoran asked Miller to come to the police station to discuss Corcoran's investigation into theft of services. Corcoran identified defendant in court as the "Jeffrey Miller" whom he arrested at the police station.

¶ 15    On cross-examination, Corcoran testified that defendant did not say in their first telephone conversation that he worked for Homeland Security for 30 years, nor did he mention Homeland Security and working in law enforcement for 30 years in the same sentence.

¶ 16    Defendant testified that he and his spouse operated a dog training facility for about 20 years, focusing on training police and security dogs. He also provided security services for about seven years, using contractors but mostly doing the work himself, including providing overnight guard service to vehicle dealers. When working security, defendant wore black "tactical pants, tactical shoes, a Level 3 armored vest with a taser, and, *** generally, anything a police officer would have on his body which is pretty standard in all security right now," including a "weapon" if needed. His gear also included a badge marked "North Shore Canine" worn on his right hip, and his shirt was marked "Security" with no indication he was in law enforcement. Defendant never worked in law enforcement or for Homeland Security.

¶ 17    On February 7, 2023, at around 4:15 p.m., defendant went to a nail salon in Morton Grove for a manicure and pedicure. He had never been to that salon before. Defendant asked Nguyen, who was behind the counter that day, about the wait for a manicure and pedicure, and Nguyen told him 45 minutes to an hour. Defendant asked if the salon used a razor blade, and Nguyen replied that it did not. Defendant denied representing himself as a law enforcement officer or referring to a particular law enforcement agency. However, he admitted displaying his badge to Nguyen by briefly lifting his shirt, explaining he was "trying to be sarcastic" and "funny" about some salons still using a razor blade despite its illegality.

¶ 18    Defendant then went to Foot Massage to have a full-body massage while he waited for his nail appointment. He had never been to Foot Massage before, but Nguyen recommended "Lisa" there. When defendant arrived, he asked the woman behind the counter for a full body massage by

pointing to a board behind the counter. He did not hear the woman speak English, and she responded to his English with gestures. The full-body massage took about an hour, and defendant described it as "the worst massage I ever had before in my life."

¶ 19    After defendant dressed and returned to the lobby, he said he was unhappy with the massage and did not want to pay for it. The masseuse did not respond in English. After defendant said he would not pay, the woman "called somebody on the phone, so [he] assumed it was a manager." When defendant noticed that there was no massage license on display, he asked why she gave him a full-body massage without a license. The woman again did not respond in English.

¶ 20    Defendant denied telling the woman he was a police officer or worked in law enforcement, but admitted that a radio scanner application or "app" on his cellphone was tuned to the Illinois State Police while he was in Foot Massage. He also admitted that he could be heard saying "Illinois State Police" on the video from Foot Massage, but testified that he said so in complaining that there was no massage license and he would call the "Illinois State Police Task Force" to report his unlicensed massage. He denied informing the woman that he worked for the Illinois State Police or that he would make an arrest. Defendant did not believe he displayed his badge at Foot Massage. Defendant left Foot Massage without paying for his massage because he "was very unhappy with the services."

¶ 21    Defendant returned to the nail salon, where he had a manicure and then spoke briefly with Nguyen. He denied displaying his badge or saying that he worked in law enforcement, and specifically denied saying that he worked for the Illinois State Police or Homeland Security. Defendant recalled Corcoran's second phone call weeks later in which Corcoran identified himself as a police officer, but defendant could not recall Corcoran's earlier call because defendant

received so many calls about his dog training and security businesses. Defendant denied telling anyone who called him during those weeks that he worked 30 years in law enforcement.

¶ 22    On cross-examination, defendant admitted that his security business was unlicensed. He had a name badge marked "North Shore Canine," "J. Miller," and "Canine Unit." Defendant acknowledged that, at the nail salon on February 7, 2023, he asked for an illegal procedure and then displayed his badge to Nguyen. His scanner app was audibly playing police radio traffic while he interacted with Nguyen at the nail salon and with Wang at Foot Massage. Defendant was asked what he was doing when he leaned down and said "57 Victor," when his app could not transmit but only receive police radio traffic, and he replied that he could not recall. When he received the phone call to go to the police department, defendant believed it was because he did not pay for a massage.

¶ 23    On redirect examination, defendant testified that he did not orally identify himself as a police officer when he displayed his badge to Nguyen, and that the woman at Foot Massage did not react when he said, "57 Victor."

¶ 24    Following closing arguments, the court found defendant guilty of two counts of false personation. The court noted that the State had to prove that defendant represented himself as a peace officer, but not necessarily a police officer with a particular law enforcement agency. Defendant "brought up something that was illegal *** to get a response" from Nguyen and then intentionally displayed a badge. The court explained that, had it viewed the Foot Massage video in isolation, knowing nothing about the case, it would have concluded "that you were a police officer because that is what you represented." It also explained that when defendant returned to the nail salon, he "used language like, I am on duty" and played "police chatter" for Nguyen, whom he had already asked "about an illegal procedure in his business."

¶ 25 Defendant filed a posttrial motion challenging the sufficiency of the trial evidence and the denial of his pretrial motion to bar testimony and evidence, but did not claim that admission of the Foot Massage video over his objection was erroneous. The court denied the motion.

¶ 26 Following a sentencing hearing, the court imposed 18 months' probation.

¶ 27 On appeal, defendant contends that the trial evidence was insufficient to sustain his convictions for false personation of a peace officer.

¶ 28 In considering a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Harvey*, 2024 IL 129357, ¶ 19. We must draw all reasonable inferences in favor of the State. *Id.* The trier of fact is free to reject hypothetical alternative explanations for the defendant's actions consistent with innocence. *People v. Grayer*, 2023 IL 128871, ¶ 32. Similarly, the trier of fact is not required to disregard inferences that flow normally from the evidence. *People v. Bush*, 2023 IL 128747, ¶ 33. We set aside a conviction only when the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Id.*

¶ 29 The trier of fact resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. *People v. Conway*, 2023 IL 127670, ¶ 20. We will not retry the defendant or substitute our judgment for that of the trier of fact regarding the weight of evidence or witness credibility. *Id.* ¶ 16. The trier of fact may accept or reject all or part of a witness's testimony (*Bush*, 2023 IL 128747, ¶ 36) and may consider the evidence in light of the trier of fact's "knowledge and observations in the affairs of life" (*People v. Mulosmani*, 2022 IL App (1st) 200635, ¶ 63).

¶ 30    Intent to commit a criminal offense need not be expressed but may be inferred from the defendant's conduct and the circumstances. *Grayer*, 2023 IL 128871, ¶ 28. A conviction may be sustained on circumstantial evidence alone. *Id.* The trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances; it is sufficient if all the evidence taken as a whole satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt. *People v. Galarza*, 2023 IL 127678, ¶ 27. A defendant is presumed to intend the natural and probable consequences of his or her acts. *Mulosmani*, 2022 IL App (1st) 200635, ¶ 65.

¶ 31    As charged, a person commits false personation "if he or she knowingly and falsely represents himself or herself to be *** [a] peace officer." 720 ILCS 5/17-2(b)(3) (West 2022). The person must act with a conscious intent to deceive. *People v. Thoennes*, 334 Ill. App. 3d 320, 327 (2002). A peace officer is:

> "(i) any person who by virtue of the person's office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses, or (ii) any person who, by statute, is granted and authorized to exercise powers similar to those conferred upon any peace officer employed by a law enforcement agency of this State." 720 ILCS 5/2-13 (West 2022).

¶ 32    Here, after viewing the evidence in the light most favorable to the State, as we must, we find it sufficient to establish defendant's guilt beyond a reasonable doubt of two counts of false personation of a peace officer.

¶ 33    Regarding the charge involving Nguyen, it is undisputed that defendant asked Nguyen if his nail salon used a razor blade in providing pedicure services, which both defendant and Nguyen knew was illegal, and defendant then briefly displayed a badge to Nguyen. Nguyen believed

defendant was conducting a "surprise inspection," a "serious" matter that gave him pause. While Nguyen testified that defendant denied working for Morton Grove or any nearby community, Nguyen also testified that defendant said something about a "county" and being "on duty," and Nguyen thanked defendant "for [his] service." It is undisputed that defendant had police radio traffic playing audibly while in Nguyen's salon. A reasonable trier of fact could conclude that defendant knowingly and successfully conveyed to Nguyen by words and actions the false impression that defendant was a peace officer.

¶ 34 Defendant maintains that, on inspection, his badge would have been apparent as a security badge rather than a police badge. However, the evidence did not reflect that defendant gave Nguyen the opportunity to examine the badge. We also need not elevate to reasonable doubt defendant's explanation that he displayed the badge merely as a bad joke. See *Mulosmani*, 2022 IL App (1st) 200635, ¶¶ 63-64 ("A trier of fact may consider the evidence in light of his or her own knowledge and observations in the affairs of life" and need not "seek all possible explanations consistent with innocence and elevate them to reasonable doubt."). Also, while defendant posits that a scanner app is not illegal, in the context of defendant's other actions, a reasonable trier of fact could conclude that defendant had this scanner app active and audible within Nguyen's salon to support the misrepresentation that defendant was a peace officer.

¶ 35 Regarding the charge involving Wang, the evidence established that defendant repeatedly demanded a massage license from Wang and then told her, "I'm just going to call and have everything shut down," as police radio traffic could be heard in the background. Defendant then said, with a device in his hand, "57 Victor, there is no massage license, nothing on the wall." After more police radio traffic, defendant told Wang, "Illinois State Police, you need a massage license or we're going to shut you down. We're going to close you down. I'll come back tomorrow. But I

need to see those licenses." Defendant told Wang that giving anything other than a foot massage was illegal and "if I catch you doing it again, I'm going to shut you down." A trier of fact could reasonably infer from the totality of these words, actions, and circumstances that defendant knowingly and falsely conveyed to Wang that he was a peace officer who could close the Foot Massage salon for performing a full-body massage without a license.

¶ 36    The evidence thus supports the inference that defendant used the police radio traffic from the scanner app, reinforced with his fake radio communications, including one discussing the lack of a license, to convey the image of a peace officer communicating by police radio. Since defendant admitted that the audible police radio traffic was coming from a scanner app on his cellphone rather than a police radio that could transmit communication, a trier of fact could also reasonably infer that defendant knew he was not actually communicating to anyone but Wang when he spoke into his cellphone in Wang's presence. Moreover, defendant repeatedly used the first person singular and plural, I and we, while discussing the Illinois State Police and the need for a massage license, giving the false representation that he, personally, could close the salon for performing his full-body massage without a license. In other words, defendant conveyed that he could act as a member of a police organization rather than make a report as an ordinary citizen. A reasonable trier of fact could conclude that defendant knowingly represented to Wang by his words and actions the false but distinct impression he was a peace officer.

¶ 37    Contrary to defendant's contentions, we need not elevate to reasonable doubt the possibility that Wang could not understand defendant's communications in English. See *Mulosmani*, 2022 IL App (1st) 200635, ¶ 64. We do not believe Wang had to be proficient in English to recognize police radio traffic as such and to infer from defendant's charade of speaking into a police radio that he was a peace officer using a police radio. We also need not credit defendant's argument that

we do not know the impression defendant's words and actions had on Wang because she did not testify. The Foot Massage video depicts defendant's words and actions made in Wang's presence, from which his knowing and false personation of a peace officer may be reasonably inferred.

¶ 38    As to the Foot Massage video, defendant argues in the context of his challenge to the sufficiency of the evidence that the trial court abused its discretion in admitting that video into evidence due to lack of a proper foundation. The State responds that defendant has forfeited any challenge to the admission of the video by not making a foundational objection at trial or preserving the claim in his posttrial motion.

¶ 39    Generally, a defendant forfeits a claim when he fails to both make a specific objection at trial and raise the specific issue in a posttrial motion. *People v. Smart*, 2025 IL 130127, ¶ 77. Here, defendant objected to the video at trial based on his pretrial motion, which did not raise foundational grounds for the exclusion of the video. His posttrial motion, in turn, claimed error from the denial of his pretrial motion. We conclude that defendant has forfeited the foundational argument in his brief by not making a foundational objection at trial or raising this claim in his posttrial motion. *Id.* We also conclude that he has forfeited a plain error analysis of this claim by not arguing plain error in his briefs. See *id.* ¶ 78 (otherwise-forfeited errors may be reviewed for plain error, but plain error review is itself forfeited by not requesting or arguing it).

¶ 40    In sum, the trial evidence viewed in the light most favorable to the State showed that defendant knowingly and falsely represented himself to Nguyen and Wang to be a peace officer. 720 ILCS 5/2-13, 17-2(b)(3) (West 2022). His words and conduct were more than mere conversations about matters of public concern or general conversations. We conclude that the evidence was not so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt of two counts of false personation of a peace officer.

¶ 41    Accordingly, the judgment of the circuit court of Cook County is affirmed.

¶ 42    Affirmed.