THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GABRIEL MARIN, Defendant-Appellant.

First District (1st Division) No. 1—01—1080

Opinion filed August 11, 2003.

Michael J. Pelletier and Jodi L. Garvey, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, John Nowak, and Daniel Maloney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Following a bench trial, defendant, Gabriel Marin, was convicted of aggravated unlawful use of a weapon and sentenced to 24 months of probation. On appeal, defendant contends he was not proven guilty beyond a reasonable doubt. Defendant further contends that the aggravated unlawful use of a weapon statute (720 ILCS 5/24—1.6 (West 2002)), under which he was convicted, is unconstitutionally overbroad, thereby violating his right to due process. We affirm.

## BACKGROUND

Three witnesses testified during defendant's bench trial. Chicago police officer Sean Loughran testified that while on patrol with his partner, he observed defendant and three other individuals standing in front of a house at 5753 South Campbell Street in Chicago. Loughran stated that defendant was holding a small, shiny metallic object in his right hand, which Loughran believed to be a gun. Loughran's partner stopped the unmarked police car about 25 feet away from the four individuals and, when Loughran emerged from the car, defendant dropped the suspected gun and Loughran heard it hit the ground. After the officers apprehended the four men, Loughran recovered a semiautomatic, .22-caliber, loaded handgun from the porch of the house. The men were handcuffed and searched, but nothing further was recovered. Defendant was taken to the police station after the three other individuals, who were minors, were released.

Loughran testified that upon arriving at the police station, defendant waived his *Miranda* rights. Defendant then told Loughran that he purchased the handgun for $80 or $90 and was carrying it for a street gang, the "Party People," with which he was affiliated. He further stated that the gun was not worth more than $50.

Andrew Martinez, a minor who was detained with defendant, testi-

fied that he, defendant and two other young men were standing on the porch of 5753 South Campbell when they were approached by two police officers. Martinez stated that he was holding the gun when the police arrived and that he dropped the gun in the grass. Martinez asserted that, although he told the police the gun was his, the police implicated defendant because Martinez was a minor and defendant was not.

Finally, defendant testified at trial that he and his brother were walking his dog when a friend called him over to the porch at 5753 South Campbell. After speaking with the individuals on the porch, he returned to walking his dog. As he walked away from the porch, however, two police officers arrived and detained him and three other individuals who were on the porch. After asking the four young men their ages, the officers took defendant to the police station. Defendant denied that he was holding a gun. He further denied that he was a member of a street gang and that he made a statement to the police officers at the police station.

The trial court found defendant guilty of aggravated unlawful use of a weapon and sentenced him to 24 months of probation. The court noted that it found Officer Loughran's testimony to be credible, while inconsistencies between the testimony of Martinez and defendant rendered them not credible as witnesses.

## ANALYSIS

On appeal, defendant contends that the aggravated unlawful use of a weapon statute (aggravated UUW) is unconstitutional on the grounds that the statute requires no culpable mental state and thereby punishes innocent conduct, resulting in the contravention of the due process provisions of both the state and federal constitutions. Defendant further contends that he was not proven guilty of aggravated UUW beyond a reasonable doubt. For the following reasons, we find the statute to be constitutional and affirm defendant's conviction.

With respect to defendant's due process contentions, we initially note that this court recently rejected this exact argument in the cases of *People v. McGee*, 341 Ill. App. 3d 1029 (2003), and *People v. Grant*, 339 Ill. App. 3d 792 (2003). We do the same here for the following reasons.

■ The aggravated UUW statute provides:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm; or

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode or fixed place of business, any pistol, revolver, stun gun or taser or other firearm; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or

(B) the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense; or

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card; or

(D) the person possessing the weapon was previously adjudicated a delinquent minor under the Juvenile Court Act of 1987 for an act that if committed by an adult would be a felony; or

(E) the person possessing the weapon was engaged in a misdemeanor violation of the Cannabis Control Act or in a misdemeanor violation of the Illinois Controlled Substances Act; or

(F) the person possessing the weapon is a member of a street gang or is engaged in street gang related activity, as defined in Section 10 of the Illinois Streetgang Terrorism Omnibus Prevention Act; or

(G) the person possessing the weapon had a[n] order of protection issued against him or her within the previous 2 years; or

(H) the person possessing the weapon was engaged in the commission or attempted commission of a misdemeanor involving the use or threat of violence against the person or property of another; or

(I) the person possessing the weapon was under 21 years of age and in possession of a handgun as defined in Section 24—3, unless the person under 21 is engaged in lawful activities under the Wildlife Code or described in subsection 24—2(b)(1), (b)(3), or 24—2(f).

\*\*\*

(c) This Section does not apply to or affect the transportation or possession of weapons that:

(i) are broken down in a non-functioning state; or

(ii) are not immediately accessible; or

(iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card.

(d) Sentence. Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony. Aggravated unlawful use of a weapon by a person who has been previously convicted of a felony in this State or another jurisdiction is a Class 2 felony." 720 ILCS 5/24—1.6 (West 2002).

■ Defendant contends that, because the statute only requires a knowing mental state and does not require criminal intent, it sweeps too broadly and permits felony convictions for wholly innocent conduct in violation of substantive due process. By way of example, defendant asserts that a hunter who receives a call about an emergency at home, thereby forgetting to unload or case his gun before he drives away, would be guilty of a felony. Similarly, he asserts that a Good Samaritan, who does not have a firearm owner's identification card, would be guilty of a felony if he found a gun on the street and, not wanting a neighborhood child to find it, put it in his car to take to the police station. Defendant argues that because the aggravated UUW statute punishes such wholly innocent conduct, it is not sufficiently confined to solely remedy the particular purpose targeted by the legislature, which he alleges is to limit gun possession by gang members and organized crime figures. The State responds to defendant's contentions by arguing that the aggravated UUW statute has valid applications and that the statute is not vague as applied to defendant under the facts of this case. Because the evidence was sufficient to establish that defendant was a gang member and was on gang-related business when he was apprehended with a loaded weapon, we agree that a vagueness challenge would fail. However, the basis of defendant's constitutional challenge is not vagueness, but overbreadth; and vagueness and overbreadth are two different legal principles. See *People v. Greco*, 204 Ill. 2d 400, 416, 790 N.E.2d 846, 856 (2003) (a statute is unconstitutionally vague where its prohibitions are not sufficiently definite "to give a person of ordinary intelligence fair warning as to what conduct is prohibited," and it does not provide "sufficiently definite standards for law enforcement officers and triers of fact that its application does not depend merely on their private conceptions"); compare *People v. Wright*, 194 Ill. 2d 1, 24, 740 N.E.2d 755, 767 (2000) (a statute is overbroad where it does not bear a reasonable relationship to a public interest to be served and the means adopted are not a

reasonable method of accomplishing the desired objective). Therefore, we note at the outset that our analysis of the statute's constitutionality will be focused solely on the question of overbreadth.

 We examine defendant's constitutionality challenge pursuant to the following well-established principles. Whether a statute is constitutional is a question of law to be reviewed *de novo. People v. Morgan*, 203 Ill. 2d 470, 486, 786 N.E.2d 994, 1004 (2003). A challenge to the constitutionality of a criminal statute may be raised for the first time on appeal (*People v. Wooters*, 188 Ill. 2d 500, 510, 722 N.E.2d 1102, 1108 (1999)); however, statutes are presumed to be constitutional, and it is the burden of the party challenging the statute to establish its invalidity (*People v. Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 766). The legislature has wide discretion to establish penalties for criminal offenses; however, this police power is limited by the constitutional right that a person may not be deprived of his liberty without due process of law. *In re K.C.*, 186 Ill. 2d 542, 550, 714 N.E.2d 491, 496 (1999). When legislation does not affect a fundamental right, its compliance with substantive due process requirements is determined under the rational basis test. *Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 767. It is well established that the right to bear arms is not a fundamental right. See *Presser v. Illinois*, 116 U.S. 252, 265, 29 L. Ed. 615, 619, 6 S. Ct. 580, 584 (1886) (the right to bears arms is not a right granted by the Constitution; instead the second amendment restricts Congress and the national government, but not the state, from infringing on the right); *Quilici v. Village of Morton Grove*, 532 F. Supp. 1169, 1182 (N.D. Ill. 1981) (the right to bear arms may be "limited by the states through the valid exercise of what has come to be known as the 'police power,' without fear that any United States Constitutional provisions will be infringed"); *People ex rel. Tucker v. Kotsos*, 68 Ill. 2d 88, 97, 368 N.E.2d 903, 907 (1977) (only those rights associated with the expression of ideas, in participation in the political process, in travel among the states, and in privacy with regard to the most intimate and personal aspects of one's life are regarded as fundamental). Because it is not a fundamental right, we analyze the constitutionality of the legislation at issue pursuant to the rational basis test. Under the rational basis test, a statute is upheld where it " 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 767, quoting *People v. Adams*, 144 Ill. 2d 381, 390, 581 N.E.2d 637 (1991).

In applying this test, we must first ascertain the statute's public purpose in order to test whether its provisions reasonably implement that purpose. Defendant seeks to narrowly confine the intended

purpose of the statute solely to gang activity based on transcripts of discussions in the Illinois House of Representatives and the Senate. As a result, he contends the statute's scope far exceeds the purpose to be served. We disagree.

■ Because the legislature did not explicitly state the purpose of the statute in the statute itself, we must look to the history (*People v. Donoho*, 204 Ill. 2d 159, 173-74, 788 N.E.2d 707, 716-17 (2003) (discussing the legislative debates in determining the meaning and purpose of a portion of the criminal sexual assault statute)) and the language (*People v. Hill*, 199 Ill. 2d 440, 456, 771 N.E.2d 374, 384 (2002) (the language of a statute is the best indication of the legislature's intent and the statute's purpose)) of the statute to determine its purpose.

■ The overall purpose of the aggravated UUW statute is to protect the public from gun violence. See *People v. Williams*, 60 Ill. App. 3d 726, 727, 377 N.E.2d 285, 286 (1978) (the unlawful use of a weapon statute demonstrates a "legislative intent to regulate the possession and use of weapons for the safety and good order of society"). This purpose is accomplished not only by prohibiting the possession of weapons by gang members, but by prohibiting the accessibility to loaded weapons in public places by society at large. The legislative intent to ban the possession of loaded weapons by the general public, not only by gang members, is articulated in the legislative debate transcripts provided by defendant. Although defendant argues that the transcripts reflect the legislature's purpose of solely targeting gang members, review of the transcripts does not lend support to this argument. To the contrary, the transcripts support the reading that the legislature intended to prevent anyone from carrying a loaded or unlicensed weapon in order to protect the general public and police enforcement officers. Not only does the Senate transcript provide explicit comment that the statute "get[s] at the broader issue beyond streetgang members that people were concerned about, which is whether or not we wanted to allow persons to have a gun easily accessible when they were stopped by police officers" (91st Ill. Gen. Assem., Senate Proceedings, April 7, 2000, at 97-98 (statements by Senator Obama)), but it indicates that the legislature explicitly discussed gang members as only *one* target of the legislation.

The language of the statute itself further indicates that the purpose of the statute goes beyond targeting gang members. Although subsection (3)(F) particularly targets persons in possession of a weapon who are members of a street gang or are engaged in street-gang-related activity (see 720 ILCS 5/24—1.6(a)(3)(F) (West 2002)), there are eight other subsections under the numeral "3," which do not single out

gang members. Among other things, these sections unequivocally prohibit anyone from carrying an accessible, loaded weapon or an unloaded weapon for which the ammunition is accessible, outside of his or her own property or fixed place of business. Had the legislature merely been concerned with gang activity, it would certainly not have provided such an explicit and exhaustive list of aggravating factors to encompass actions well beyond such activity. See, *e.g.*, *People v. Wick*, 107 Ill. 2d 62, 67, 481 N.E.2d 676, 679 (1985) (the most direct means in achieving the goal of protecting the public from the dangers of arson would be to categorically ban the setting of fires).

For these reasons, we agree with the conclusion in *McGee* and *Grant* that the legislature's purpose in enacting the statute was to prevent any person from carrying a loaded weapon on his person or in his vehicle due to "the inherent dangers to police officers and the general public." *Grant*, 339 Ill. App. 3d at 806; *McGee,* 341 Ill. App. 3d at 1037. There is no question that such a purpose is a legitimate state interest properly regulated by the legislature. See *Quilici*, 532 F. Supp. at 1176 (the possession of guns poses such a threat to society that it is subject to an extraordinary degree of control by the legislature); *Williams*, 60 Ill. App. 3d at 728, 377 N.E.2d at 286; *Biffer v. City of Chicago*, 278 Ill. 562, 575, 116 N.E. 182, 187 (1917) ("There can be no question but that the prevention of the carrying of concealed deadly weapons will tend strongly to promote the safety of the community. Such regulations clearly come within the police power of the State").

■ Following this identification of the legislature's legitimate purpose, we turn to defendant's contention that the statute as written is not reasonably related to accomplishing its purpose. See *Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 767. Defendant argues that because the statute lacks a culpable mental state, it violates due process by potentially punishing innocent conduct, which is not intended to be the target of the legislation. We disagree, as we find that the statute is reasonably related to its goal of preventing anyone from carrying a weapon in the name of public safety because access to a weapon can lead to criminal behavior despite a lack of criminal intent. See generally *Quilici*, 532 F. Supp. at 1176; *Williams*, 60 Ill. App. 3d at 728, 377 N.E.2d at 286; *Biffer*, 278 Ill. at 575, 116 N.E. at 187.

Defendant relies on three Illinois Supreme Court decisions to support his argument that the statute is not reasonably related to accomplishing its intended purpose—*People v. Wright*, 194 Ill. 2d 1, 740 N.E.2d 755 (2000), *People v. Wick*, 107 Ill. 2d 62, 481 N.E.2d 676 (1985), and *People v. Zaremba*, 158 Ill. 2d 36, 630 N.E.2d 797 (1994). We find these cases to be distinguishable for the following reasons.

The statute at issue in *Wright* required certain individuals,

licensed under the Illinois Vehicle Code, to maintain records relating to the acquisition and disposition of vehicles and parts for three years at their place of business. 625 ILCS 5/5—401.2(a) (West 1996). Anyone who knowingly failed to do so was guilty of a Class 2 felony. 625 ILCS 5/5—401.2(I) (West 1996). The *Wright* court defined the purpose of the statute as the prevention or reduction of the transfer or sale of stolen vehicles or their parts within the State of Illinois. *Wright*, 194 Ill. 2d at 25, 740 N.E.2d at 767. However, the court found that the statute was not reasonably designed to achieve this purpose because it potentially punished as a felony a slight lapse in record keeping by an individual acting with no criminal intent. *Wright*, 194 Ill. 2d at 28, 740 N.E.2d at 768-69.

In *Wick*, the court invalidated a section of the aggravated arson statute that made it a Class X felony to "knowingly" damage a building by fire when that fire injures a fireman or policeman without distinguishing to whom the property belonged or the intent of the accused. Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(3). The simple arson statute, on the other hand, required the offender to knowingly damage by fire property *belonging to another without his consent, or any property with the intent to defraud the insurer*, thus requiring a greater degree of malice. The *Wick* court held that because the aggravated arson statute did not require the same unlawful purpose as that required for simple arson, the statute was unconstitutional because it could punish wholly innocent conduct. For example, a farmer who legally burns his barn to clear space for a new one would be guilty of a Class X felony if a fireman were injured at the scene. Therefore, the statute did not bear a reasonable relationship to its purpose of providing a more severe penalty for arsonists whose conduct resulted in injury to a fireman or policeman. *Wick*, 107 Ill. 2d at 66, 481 N.E.2d at 678-79.

In *Zaremba*, the court invalidated the theft statute, section 16—1(a)(5) of the Criminal Code of 1961, for reasons similar to those in *Wright*. The statute made it a felony to obtain or exert control over property in the custody of any law enforcement agency where the person has been officially informed that the property was stolen. Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(5). The *Zaremba* court found that subsection (a)(5) did not provide a culpable mental state and did not bear a reasonable relationship to its purpose of breaking up fencing operations because it potentially punished wholly innocent conduct. *Zaremba*, 158 Ill. 2d at 40-42, 630 N.E.2d at 799-800. The example of innocent conduct recited in *Zaremba* was that the section would criminalize the actions of a police evidence technician who retained the proceeds of a theft for safekeeping. *Zaremba*, 158 Ill. 2d at 38, 630 N.E.2d at 798.

Defendant also cites to *In re K.C.*, 186 Ill. 2d 542, 714 N.E.2d 491 (1999), in which case the supreme court found that two sections of the Illinois Vehicle Code violated due process because they were capable of punishing wholly innocent conduct without requiring proof of a culpable mental state. *K.C.*, 186 Ill. 2d at 552-53, 714 N.E.2d at 497. The sections of the Code at issue provided that it was a felony to damage, remove any part of, tamper with, enter, set in motion, or work on a vehicle without authority to do so. 625 ILCS 5/4—102 (West 1996). In finding the statute unconstitutional, the court noted that the statute would make criminals of people who decorate the bride and groom's car during a wedding ceremony or someone who gets into a traffic accident. *K.C.*, 186 Ill. 2d at 553, 714 N.E.2d at 497. Therefore, the legislation was not rationally related to the goal of preventing vandalism and malicious mischief. *K.C.*, 186 Ill. 2d at 553, 714 N.E.2d at 497.

In each of these cases, the provision of a culpable mental state would have eliminated the ensnarement of the innocent conduct of concern from the sweep of the statutes without otherwise interfering with or diluting their overall thrust and purpose. See *Wick*, 107 Ill. 2d at 67-68, 481 N.E.2d at 679 ("[W]e hold that the legislature's failure to require a culpable intent renders unconstitutional subsection (a)(3) of the aggravated-arson statute ***. *** Because an effective means of reducing injuries to firemen and police officers resulting from arson is a laudatory goal, we encourage the legislature to cure the constitutional defect of the statute as it is presently formulated at the earliest possible time"); *Zaremba*, 158 Ill. 2d at 43, 630 N.E.2d at 800 ("section 16—1(a)(5) is unconstitutional because it fails to require a culpable mental state ***. *** Because an effective method of breaking up fencing operations is a laudatory goal, we encourage the legislature to cure the constitutional defect of the statute as it is presently written at the earliest possible time"); *Wright*, 194 Ill. 2d at 28-30, 740 N.E.2d at 768-69 ("[S]ection 5—401.2 is not reasonably designed to achieve its purpose. *** [E]ven a slight lapse in record keeping by an individual with no criminal purpose may be punished as a Class 2 felony. *** Because providing an effective system of mandatory record keeping to prevent or reduce the transfer or sale of stolen vehicles and parts is a laudatory goal, we encourage the legislature to remedy this constitutional defect at the earliest possible time"). The "knowing" mental state or the lack of any mental state at all simply swept too broadly since the prohibited activity could have been effectively targeted by this enhancement of the mental state. Because it was the criminal purpose behind the behavior, not the behavior itself, that was intended to be the subject of the legislation, the interposition of criminal intent would not have conflicted with the purpose of the statutes.

For example, in *Wright*, there would be no reason to require the maintenance of vehicle transaction records other than to prohibit the intentional concealment of stolen vehicles or parts. See *Wright*, 194 Ill. 2d at 24-25, 740 N.E.2d at 767. Likewise, there is no reason to criminalize injury to a firefighter or police officer under the aggravated arson statute where the setting of a fire to one's own property, which might result in such an injury, is recognized as legitimate in the very same statute under the subsection for simple arson. In this regard, not only was the underlying activity in *Wick* of burning one's own barn legal, but the purpose of the statute was to enhance the penalty where the fire was illegally set, not to criminalize a legal activity where it had an unintended result. See *Wick*, 107 Ill. 2d at 66, 481 N.E.2d at 678-79. Similarly, there was no reason and no intent on the part of the legislature to criminalize the lawful receipt of stolen goods by a police employee, which was at issue in *Zaremba*, or, as in *K.C.*, to punish the decorating of a bride and groom's car in the absence of a criminal purpose or intent. *Zaremba*, 158 Ill. 2d at 38, 41, 630 N.E.2d at 798, 800; *K.C.*, 186 Ill. 2d at 552-53, 714 N.E.2d at 497. Accordingly, because these statutes lacked criminal intent, they ultimately targeted noncriminal or "innocent" actions instead of their criminal results.

Here, the imposition of a culpable mental state or criminal intent would entirely defeat the statute's purpose of protecting the public and law enforcement officers from the danger of weapons in public places. Were intent to be added to the already included requirement of a knowing mental state, the statute would fail to prevent situations where no criminal intent existed, but criminal conduct resulted despite the lack of intent, *e.g.*, accidents with loaded guns on public streets or the escalation of minor public altercations into gun battles or, as the legislature pointed out, the danger of a police officer stopping a car with a loaded weapon on the passenger seat. These scenarios would apply even to defendant's examples of the Good Samaritan and the hunter. Thus, otherwise "innocent" motivations may transform into culpable conduct because of the accessibility of weapons as an outlet for subsequently kindled aggression. In this regard, unlike the cases cited by defendant, the underlying activity of possessing or transporting an accessible and loaded weapon is itself dangerous and undesirable, regardless of the intent of the bearer since it may lead to the endangerment of public safety. See, *e.g.*, 91st Ill. Gen. Assem., House Proceedings, April 10, 2000, at 70 (statements of Representative Black) ("I don't see any legitimate reason for a law-abiding, lawful, legal gun owner to transport a loaded gun in the front seat of his car. *** That is not the way you transport a gun under legal and lawful conditions and that's prohibited under this [statute], as it should be"). Access to

a loaded weapon on a public street creates a volatile situation vulnerable to spontaneous lethal aggression in the event of road rage or any other disagreement or dispute. The prevention of the potential metamorphosis of such "innocent" behavior into criminal conduct is rationally related to the purpose of the statute, which is to enhance public safety. Because the legislature has a compelling interest in preventing the possession of guns in public under any such circumstances, the statute is reasonably related to the legislature's purpose of "mak[ing] communities in this state safer and more secure for their inhabitants." *McGee*, 341 Ill. App. 3d at 1037.

This reasoning is comparable to the reasoning of the court in *People v. Thoennes*, 334 Ill. App. 3d 320, 777 N.E.2d 1075 (2002), where the Fourth District determined that section 32—5.1 of the Criminal Code, stating "[a] person who knowingly and falsely represents himself to be a peace officer *** commits a Class 4 felony" (720 ILCS 5/32—5.1 (West 1998)), was constitutional despite its lack of criminal intent. *Thoennes*, 334 Ill. App. 3d at 326, 777 N.E.2d at 1079-80. Because the statute's purpose was to protect "the public from being deceived into believing an individual who represents himself to be a peace officer has the authority to act in an official capacity when no such authority exists," it did not require the possibility of harm to a citizen or for the impersonator to have a criminal purpose in mind. *Thoennes*, 334 Ill. App. 3d at 326, 777 N.E.2d at 1080. The court stated that the act of knowingly impersonating a peace officer was in itself potentially dangerous and the perpetrator need not have the intent to commit a crime in so doing. *Thoennes*, 334 Ill. App. 3d at 326, 777 N.E.2d at 1080. The court provided the example of a motorist who has witnessed a serious accident requesting assistance from an impersonator believing her request for assistance will be immediately acted upon and emergency services will be contacted. *Thoennes*, 334 Ill. App. 3d at 326-27, 777 N.E.2d at 1080.

Similarly, in *People v. Farmer*, 165 Ill. 2d 194, 650 N.E.2d 1006 (1995), the supreme court upheld a statute that prevented a person from knowingly and without authority bringing contraband into a penal institution. The court held that the accused need not possess a criminal intent to smuggle the contraband to an inmate. To the contrary, the knowing possession of contraband was reasonably related to the objective of preventing inmates from gaining access to weapons and drugs due to the threat that contraband could pose in a penal setting. *Farmer*, 165 Ill. 2d at 208-09, 650 N.E.2d at 1013. See also *People v. Jamesson*, 329 Ill. App. 3d 446, 454, 768 N.E. 2d 817, 824-25 (2002) (statute making it a crime to knowingly associate with gang members after having received a sentence conditioned on refraining from contact

with street gang members found to be constitutional despite lack of criminal intent); *Wright*, 194 Ill. 2d at 38-39, 740 N.E.2d at 774 (Bilandic, J., concurring in part and dissenting in part) (under *certain circumstances*, an absence of culpable intent will render a statute unconstitutional).

As a result, we agree with *McGee* and *Grant* that the aggravated UUW statute, in requiring only a knowing mental state rather than criminal intent unlike the statutes in *Wright*, *Wick*, *Zaremba* and *K.C.*, bears a rational relationship to the objective of protecting the general public and law enforcement from the possession of loaded weapons in public places and does not otherwise reach beyond its valid scope and purpose.

Moreover, we note that the concern for innocent conduct ensnared in *Zaremba* and *Wright* was conduct that was recurrent and ongoing in nature, as, arguably, was the activity in *K.C.* On the other hand, in our case, the scenarios of the Good Samaritan and the hunter posture nonrecurrent anomalies, the prosecution of which could well be left to prosecutorial discretion. Arguably, the legislature should not be required to carry the burden of carving out every possible anomolous exception at the risk of having its statute declared facially unconstitutional. The scenarios raised by defendant here are not comparable to the commonly recurring activity in *Wright* and the ongoing essential police practice in *Zaremba*. The statutory violations of the hunter and Good Samaritan are not inevitable as there are a number of simple ways for the hunter and Good Samaritan to act in full compliance. For instance, as we stated in *McGee*, he or she may take a moment to unload the gun or to place it in a nonaccessible place such as the trunk of a car; or the Good Samaritan might ask someone else to call the police while he makes sure a child does not touch the found gun. As a result, in addition to the fact that in *Wright*, *Zaremba* and *K.C.* the statutes would not be undermined or diluted by limiting the prohibitions to conduct with a culpable mental state, those cases are also distinguishable because the innocent conduct ensnared by the statutes were recurring and on-going, and, in the case of *Zaremba*, essential to police functions.

■ Finally, defendant argues that even if we find the statute to be constitutional, he was not proven guilty of aggravated unlawful use of a weapon beyond a reasonable doubt. When a defendant challenges the sufficiency of the evidence, a reviewing court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Taylor*, 186 Ill. 2d 439, 445, 712 N.E.2d 326, 329 (1999). It is the function of the

trier of fact to determine the credibility of the witnesses, decide the weight to be given their testimony, and draw reasonable inferences from the evidence. *People v. Williams*, 193 Ill. 2d 306, 338, 739 N.E.2d 455, 472 (2000). A criminal conviction will not be set aside for insufficient evidence unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of a defendant's guilt. *Taylor*, 186 Ill. 2d at 445, 712 N.E.2d at 329.

In this case, the court specifically stated that it found Officer Loughran's testimony to be credible. To the contrary, the court indicated that Martinez and defendant provided inconsistent testimony and were not credible witnesses. Because the court believed Loughran's testimony that he saw defendant holding a loaded gun at which time he was not on his own property or in his own place of business, we cannot conclude that the evidence presented at trial was so improbable or unreasonable as to create a reasonable doubt of defendant's guilt.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

O'MALLEY and SMITH, JJ., concur