THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CESAR PIZANO, Defendant-Appellee.

First District (4th Division)   No. 1—01—4277

Opinion filed March 4, 2004.

Michael J. Pelletier and Daniel J. Walsh, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Heather Weiss, and Thomas J. Loftus, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Cesar Pizano was convicted of knowingly possessing a fraudulent identification card and sentenced to 18 months' probation and 7 days in the Sheriff's Work Alternative Program (SWAP). On appeal, he raises the following contentions: (1) his sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11); (2) section 14B(b)(1) of the Illinois Identification Card Act (the Act) (15 ILCS 335/14B(b)(1) (West 1998)) is unconstitutionally overbroad and violates his right to substantive due process; and (3) trial counsel was ineffective by eliciting prejudicial testimony from defendant. For the following reasons, we affirm defendant's conviction, vacate his sentence, and remand for resentencing.

## BACKGROUND

On December 14, 1999, defendant was arrested for retail theft while at a department store at 4620 South Damen Street in Chicago. Officer Joseph Elfaher testified that he retrieved two resident alien identification cards from defendant's wallet. One of the cards displayed defendant's real name and the other card displayed the name "Cesar Ruiz." Defendant admitted that the card with the name of Cesar Ruiz was fake and that he had purchased it from a nearby store. The parties then stipulated that if called to testify, Joe Ferra of the Department of Immigration and Naturalization Services would testify that, after analyzing the alien identification card with the name Cesar Ruiz on it, he determined that the card was fraudulent.

Defendant testified that he had lived in the United States for 19 years. He had two resident alien identification cards, one of which he was authorized to carry and one of which he was not authorized to carry. He stated that six months prior to his arrest his wallet was stolen and he purchased a fraudulent identification card to "get into clubs and that." Defendant was over the age of 21 at the time. He subsequently applied for and received an official replacement identification card, but continued to keep the fraudulent card in his wallet. He stated that he forgot he had the fraudulent card in his wallet, but when asked by the court how often he used the card to go to clubs, he replied, "two or three times in a month." The trial court found defendant guilty of knowingly possessing a fraudulent identification card under section 14B(b)(1) of the Act. 15 ILCS 335/14B(b)(1) (West 1998).

ANALYSIS

■ Defendant initially contends that the sentence imposed for possessing a fraudulent identification card pursuant to section 14B(c)(1) (15 ILCS 335/14B(c)(1) (West 1998)) violates the proportionate penalties clause when compared to the sentence imposed for various other subsections of the fraudulent identification card statute (15 ILCS 335/14B(c)(2), (c)(3) (West 1998)) and when compared to the sentence imposed for possessing a fictitious or unlawfully altered driver's license or permit pursuant to section 6—301.1(c)(1) of the Illinois Vehicle Code (the Vehicle Code) (625 ILCS 5/6—301.1(c)(1) (West 1998)). A statute is presumed to be constitutional, and the party challenging a statute bears the burden of establishing its invalidity. *People v. Graves*, 207 Ill. 2d 478, 482, 800 N.E.2d 790, 792 (2003). This court has an obligation to construe a statute in such a manner as to uphold its constitutionality if it is reasonable to do so. Whether the statute is constitutional will be reviewed *de novo*. *Graves*, 207 Ill. 2d at 482, 800 N.E.2d at 792.

■ Article I, section 11, of the Illinois Constitution, commonly referred to as the proportionate penalties clause, provides in pertinent part that "[a]ll penalties shall be determined *** according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11. Our supreme court has held that the proportionate penalties clause can be violated in one of three instances, namely, where (1) the penalty for an offense is cruel, degrading, or so completely disproportionate to the offense for which it is imposed as to shock the moral sense of the community; (2) similar offenses are compared and conduct that creates a less serious threat to public health and safety is punished more severely; and (3) the penalties imposed for identical offenses differ. *People v. Moss*, 206 Ill. 2d 503, 522, 795 N.E.2d 208, 220 (2003).

■ In the present case, defendant asserts a violation of the second type. He initially argues that the penalty for the offense for which he was convicted, knowing possession of a fraudulent identification card, is more severe than the penalty imposed for the offenses delineated in various other subsections of the statute, which defendant maintains are similar but more serious offenses. When a defendant raises a challenge of this type, the court must apply a two-step cross-comparison analysis of the various subsections of the statute. See *People v. Hill*, 199 Ill. 2d 440, 455, 771 N.E.2d 374, 383 (2002). First, the court must compare the purposes of the specific provisions contained in the same statute and determine whether they are sufficiently distinct such that proportionality review is inappropriate. If the offenses do not have common or related purposes, a comparative proportionality review is inappropriate; when legislation defining criminal offenses is enacted

for different purposes, we will presume that the legislature considered different factors in determining the appropriate penalties for the offenses and will defer to its judgment in this regard. If, however, the purposes of the two offenses are related, the court must then determine whether the offense with the harsher penalty is more serious than the offense with the lesser penalty. *Moss*, 206 Ill. 2d at 523, 795 N.E.2d at 221; *Hill*, 199 Ill. 2d at 454, 771 N.E.2d at 383.

■ Accordingly, we must first determine whether the legislature had a common or related purpose when enacting the various subsections of the fraudulent identification card statute.

Section 14B provides as follows:

"(b) It is a violation of this Section for any person:

1. To knowingly possess, display, or cause to be displayed any fraudulent identification card;

2. To knowingly possess, display, or cause to be displayed any fraudulent identification card for the purpose of obtaining any account, credit, credit card or debit card from a bank, financial institution or retail mercantile establishment[;]

3. To knowingly possess any fraudulent identification card with the intent to commit a theft, deception or credit or debit card fraud in violation of any law of this State or any law of any other jurisdiction;

4. To knowingly possess any fraudulent identification card with the intent to commit any other violation of any law of this State or any law of any other jurisdiction for which a sentence to a term of imprisonment in a penitentiary for one year or more is provided;

5. To knowingly possess any fraudulent identification card while in unauthorized possession of any document, instrument or device capable of defrauding another;

6. To knowingly possess any fraudulent identification card with the intent to use the identification card to acquire any other identification document;

7. To knowingly possess without authority any license-making implement;

8. To knowingly possess any stolen identification card making implement;

9. To knowingly duplicate, manufacture, sell or transfer any fraudulent identification card;

10. To advertise or distribute any information or materials that promote the selling, giving, or furnishing of a fraudulent identification card.

(c) Sentence.

1. Any person convicted of a violation of paragraph 1 of subsection (b) of this Section shall be guilty of a Class 4 felony and shall

be sentenced to a minimum fine of $500 or 50 hours of community service, preferably at an alcohol abuse prevention program, if available.

2. Any person convicted of a violation of any of paragraphs 2 through 9 of subsection (b) of this Section shall be guilty of a Class 4 felony.

3. Any person who violates paragraph 10 of subsection (b) of this Section is guilty of a Class A misdemeanor." 15 ILCS 335/14B(b), (c) (West 1998).

Where the legislature has not explicitly stated its purpose in enacting the various subsections of the statute, the plain language of the statute is the best indicator of legislative intent. *People v. Koppa*, 184 Ill. 2d 159, 169, 703 N.E.2d 91, 97 (1998).

Defendant argues that the common purpose of the statute is to "protect the public from fraud, perpetrated by the use of a fraudulent identification card." We disagree that the legislature is merely targeting the *use* of these fraudulent cards. While sections (b)(1) through (b)(6) indeed deal with the knowing possession or display of a fraudulent identification card, sections (b)(7) and (b)(8) focus on the implements designed to manufacture, assemble or authenticate the cards. Section (b)(9) targets those persons who duplicate, manufacture, sell or transfer the cards, and section (b)(10) targets those persons who promote the sale of the cards. Thus, it is evident that the legislature had distinct purposes in enacting sections (b)(7) through (b)(10) as they are aimed, *not* at the possession or use of these cards, as in section (b)(1), but the promotion, manufacture, distribution and implementation of these cards. Accordingly, it cannot be maintained that all subsections have a common statutory purpose.

We must then turn our attention to a comparison of section (b)(1), knowing possession of a fraudulent identification card, and sections (b)(2) through (b)(6), which include knowing possession of a fraudulent identification card, but also encompass further aggravating elements. The State argues that the legislative purposes are distinct. It maintains that in enacting section (b)(1), the legislature was attempting to impose a harsher penalty on those who are minors and use a fraudulent identification card to enter bars and purchase alcoholic beverages. In support of its argument, the State relies upon the penalty imposed for a violation of section (b)(1) and its legislative history.

When originally enacted, the penalty for knowing possession of a fraudulent identification card was a Class 4 felony. In 1994, the statute was amended pursuant to Public Act 88—210 (Pub. Act 88—210, eff. January 1, 1994) to provide that, "Any person convicted of a violation

of paragraph 1 of subsection (b) of this Section shall be guilty of a Class 4 felony *and shall be sentenced to a minimum fine of $500 or 50 hours of community service, preferably at an alcohol abuse prevention program, if available."* (Emphasis added.) 15 ILCS 335/14B(c)(1) (West 1998). According to the legislative history regarding the amendment, "This bill amends the Illinois Identification Card Act *** to require a minimum five-hundred-dollar fine or fifty hours community service for the *** unlawful use of a driver's license to obtain alcohol or possession of a fictitious, fraudulent, or unlawfully altered [identification card]." 88th Ill. Gen. Assem., Senate Proceedings, April 16, 1993, at 5 (statements of Senator Hawkinson). Thus, the State concludes that section (b)(1) has an alcohol-related purpose while sections (b)(2) through (b)(6) target the use of a fraudulent identification card to commit certain specified crimes such as to obtain credit, commit a theft, or commit another felony.

We cannot agree with the State's narrowly defined interpretation of section (b)(1) where the plain language of the statute controls and encompasses *any* person who possesses a fraudulent identification card, not only minors attempting to unlawfully purchase or drink alcohol. For example, section (b)(1) equally encompasses the defendant in the present case, or one who possesses a fraudulent resident alien identification card to conceal one's immigration status, or one who possesses a fraudulent identification card to conceal one's true identity to avoid prosecution for other crimes previously committed.

Knowing possession of a fraudulent identification card is an offense composed of some, but not all, of the elements of the aggravating offenses outlined in sections (b)(2) through (b)(6), and does not have any element not included in the aggravating offenses. As a result, a common or similar purpose can be delineated among these subsections, namely, the protection against the myriad types of fraudulent conduct that arise from the possession and use of fraudulent identification cards.

██ We must next consider whether the offense with the harsher penalty is more serious than the offense with the lesser penalty. *Moss*, 206 Ill. 2d at 522, 795 N.E.2d at 220. Factors to be considered in determining the seriousness of an offense are the degree of harm, the frequency of the crime and the high risk of bodily harm associated with it. *Moss*, 206 Ill. 2d at 529, 795 N.E.2d at 224. Knowing possession of a fraudulent identification card is a Class 4 felony with the added mandatory penalty of a minimum fine of $500 or 50 hours of community service preferably at an alcohol abuse prevention program, if available. 15 ILCS 335/14B(c)(1) (West 1998). The penalty for knowing possession of a fraudulent identification card with the aggravating

elements is indicative of a higher degree of harm, but is only punishable as a Class 4 felony. 15 ILCS 335/14B(c)(2) (West 1998). Thus, the offense with the harsher penalty, mere knowing possession, is punished more severely than the more serious offense of, for example, knowing possession with the intent to commit a theft, which has a lesser penalty. Accordingly, where mere possession of a fraudulent identification card results in a more severe penalty for less serious conduct, the sentencing provision for a violation of section (b)(1) (15 ILCS 335/14B(c)(1) (West 1998)) violates the proportionate penalties clause of the Illinois Constitution.

■■ We next consider defendant's argument that as a result of the disproportionate penalty his conviction must be reversed. " 'The effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment.' " *People v. Wells*, 317 Ill. App. 3d 247, 249, 739 N.E.2d 626, 628 (2000), quoting *People v. Gersch*, 135 Ill. 2d 384, 390, 553 N.E.2d 281 (1990). Here, prior to the enactment of Public Act 88—210, which enhanced the penalty for knowing possession of a fraudulent identification card by adding the mandatory fine or community service, the offense was a Class 4 felony. 15 ILCS 335/14B(c)(1) (West 1992). This sentence would not be harsher than the Class 4 felony imposed for a violation of sections (b)(2) through (b)(6). See 15 ILCS 335/14B(c)(2) (West 1998). Accordingly, we need not reverse defendant's conviction. However, before we may conclude that a remand for resentencing is appropriate, we must address defendant's other contentions that his conviction requires reversal.

■ Defendant contends that the sentence for a violation of section 14B(b)(1) of the Act also violates the proportionate penalties clause when compared to the sentence for possessing a fictitious or unlawfully altered driver's license or permit pursuant to section 6—301.1(b)(1) of the Vehicle Code. That section provides in pertinent part:

"(b) It is a violation of this Section for any person:

1. To knowingly possess any fictitious or unlawfully altered driver's license or permit[.]" 625 ILCS 5/6—301.1(b) (West 1998).

Any person convicted of section 6—301.1(b)(1) of the Vehicle Code is guilty of a Class A misdemeanor and "shall be sentenced to a minimum fine of $500 or 50 hours of community service, preferably at an alcohol abuse prevention program, if available." 625 ILCS 5/6—301.1(c)(1) (West 1998). While defendant uses the terms "fictitious" and "fraudulent" interchangeably, they have distinct meanings and lead to distinct purposes. A "fraudulent identification card" is specifically defined in the Act as:

"any identification card which purports to be an official identification card for which a computerized number and file have not been created by the Secretary of State, the United States government or any state or political subdivision thereof, or any governmental or quasi-governmental organization. For the purpose of this paragraph, any identification card which resembles an official identification card in either size, color, photograph location, or design or uses the word 'official', 'state', 'Illinois', *** individually or in any combination thereof to describe or modify the term 'identification card' or 'I.D. card' anywhere on the card, or uses a shape in the likeness of Illinois or any other state on the photograph side of the card, is deemed to be a fraudulent identification card ***." 15 ILCS 335/14B(a)(1) (West 1998).

A fictitious driver's license is specifically defined in the Vehicle Code:

"any issued license *** for which a computerized number and file have been created by the Secretary of State or other official driver's license agency in another jurisdiction which contains false information concerning the identity of the individual issued the license or permit." 625 ILCS 5/6—301.1(a)(1) (West 1998).

Thus, the offense of knowing possession of a *fraudulent* identification card encompasses any card that purports to be an official identification card, but has not been actually issued to an individual by the proper authorities, but is made to resemble an official card. Alternatively, the offense of knowing possession of a *fictitious* driver's license encompasses only driver's licenses that have actually been issued by the proper authorities with false information on them. By establishing distinct definitions for "fraudulent" and "fictitious," we presume that the legislature sought to distinguish these crimes as separate and unique offenses with distinct purposes. As such, a comparative proportionality analysis is not appropriate. *People v. Lombardi*, 184 Ill. 2d 462, 479, 705 N.E.2d 91, 99 (1998).

■ We next consider defendant's argument that section 14B(b)(1) of the Act only requires a "knowing" mental state, but fails to require proof of a criminal purpose or more culpable mental state. He maintains that the statute is facially "overbroad," citing the overbreadth doctrine, because it potentially punishes innocent conduct in violation of due process. Initially, it must be noted that defendant conflates the overbreadth doctrine, which implicates first amendment protections, with substantive due process guarantees. The overbreadth doctrine is "designed to protect first amendment freedom of expression from laws written so broadly that the fear of punishment might discourage people from taking advantage of that freedom." *People v. Anderson*, 148 Ill. 2d 15, 26, 591 N.E.2d 461, 466 (1992), citing *Broadrick v. Oklahoma*, 413 U.S. 601, 611-13, 37 L. Ed. 2d 830, 839-40, 93 S.

Ct. 2908, 2915-17 (1973). Defendant has not argued that a first amendment right has been infringed, and therefore he lacks standing to challenge the statute on the basis of the overbreadth doctrine.

However, we address defendant's argument to the extent that he argues that the statute is facially unconstitutional because it violates substantive due process guarantees. See *Anderson*, 148 Ill. 2d at 27, 591 N.E.2d at 466 (distinguishing between a first amendment overbreadth claim and a due process claim). While the legislature has wide discretion to establish penalties for criminal offenses, this police power is limited by the constitutional right that a person may not be deprived of his liberty without due process of law. *In re K.C.*, 186 Ill. 2d 542, 550, 714 N.E.2d 491, 496 (1999). When legislation does not affect a fundamental right, its compliance with substantive due process requirements is determined under the rational basis test. *People v. Wright*, 194 Ill. 2d 1, 24, 740 N.E.2d 755, 767 (2000).

Under the rational basis test, a statute is upheld where it " 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 767, quoting *People v. Adams*, 144 Ill. 2d 381, 390, 581 N.E.2d 637 (1991). Therefore, we must first ascertain the statute's public purpose to determine whether its provisions reasonably implement that purpose. *People v. Marin*, 342 Ill. App. 3d 716, 722, 795 N.E.2d 953, 958 (2003). The overall purpose of section 14B(b) is to eradicate fraud, a legitimate goal within the scope of the State's police power.

We must next consider whether the statute is rationally related to its intended purpose of eradicating fraud. Defendant argues that the statute is not rationally related to accomplishing its intended purpose because the statute merely requires a "knowing" mental state and without a more culpable mental state or criminal purpose, the statute potentially punishes innocent conduct. In support of his argument, defendant relies on several Illinois Supreme Court decisions and hypothetical scenarios. We find defendant's cited cases distinguishable. In *People v. Wright*, 194 Ill. 2d 1, 25, 740 N.E.2d 755, 768-69 (2000), the statute at issue made it a Class 2 felony for certain people licensed under the Vehicle Code to knowingly fail to maintain records relating to the acquisition and disposition of vehicles and parts at their place of business. The purpose of the statute was to prevent or reduce the transfer or sale of stolen vehicles or their parts. The court found that the statute potentially punished as a felony a slight lapse in record keeping by an individual acting with no unlawful purpose and therefore did not contain a reasonable means of preventing the trafficking of stolen vehicles and parts. *Wright*, 194 Ill. 2d at 28, 740 N.E.2d at 768-69.

In *People v. Wick*, 107 Ill. 2d 62, 64-65, 481 N.E.2d 676, 677 (1985), the aggravated arson statute made it a Class X felony to knowingly damage a building by fire when that fire injures a fireman or policeman. However, the simple arson statute required the offender to knowingly damage by fire property belonging to another without his consent, or any property with the intent to defraud the insurer, thus requiring a greater degree of malice. Where the aggravated arson statute did not require the same unlawful purpose as that required for simple arson, the statute was susceptible to punishing wholly lawful burnings with an unintended result. Therefore, the statute did not bear a reasonable relationship to its stated purpose of providing a more severe penalty for arsonists whose conduct resulted in injury to a fireman or policeman. *Wick*, 107 Ill. 2d at 66, 481 N.E.2d at 678-79.

In *People v. Zaremba*, 158 Ill. 2d 36, 42, 630 N.E.2d 797, 800 (1994), the statute made it a felony to obtain or exert control over property in the custody of any law enforcement agency where the person knows that the property was stolen. The court found that the statute provided no culpable mental state and did not bear a reasonable relationship to its stated purpose of breaking up "fencing" operations because it potentially punished the lawful actions of a police evidence technician who retained the proceeds of a theft for safekeeping. *Zaremba*, 158 Ill. 2d at 42, 630 N.E.2d at 800. Therefore, the court held that the statute violated substantive due process guarantees.

In each case, the statutes did not possess a rational relationship to their intended purpose because they could encompass conduct by people who reasonably believed they were engaging in a recurring lawful activity. Here, unlike *Wright, Wick* and *Zaremba*, there can be no useful, legitimate reason or lawful purpose in having access to a fraudulent identification card. Therefore, section 14B(b)(1) would not be applied to conduct unrelated to the purpose of the statute, to provide an effective means of preventing fraud.

Defendant asserts that a mother who confiscates her underage teenager's fraudulent driver's license, a Good Samaritan who finds a fraudulent identification card on the street and picks it up with the intent of finding and restoring it to its owner, or a merchant who confiscates a fraudulent identification card presented to him to commit a theft would all lack any culpable mental state or criminal purpose, but would all be guilty of a felony. There are several fallacies in defendant's argument, namely, that the Good Samaritan would not "knowingly" possess a fraudulent identification card that he picked up off the street. With respect to the mother and the merchant, there are other means available to them to comply with the law, such as cutting up the cards. Furthermore, as we stated in *People v. Marin*, these

remote scenarios would be left to prosecutorial discretion. "[T]he legislature should not be required to carry the burden of carving out every possible anomalous exception at the risk of having its statute declared facially unconstitutional." *Marin*, 342 Ill. App. 3d at 729, 795 N.E.2d at 963-64. These violations are not inevitable as there are a number of simple ways to act in full compliance.

Additionally, we note that in *People v. Harris*, 343 Ill. App. 3d 1014, 798 N.E.2d 1259 (2003), the Fourth District recently held that where no other reasonable options are available, one could invoke the necessity defense, which provides that " 'conduct that would otherwise be an offense is justified if the defendant was (1) without blame in occasioning or developing the situation and (2) reasonably believed the conduct was necessary to avoid a public or private injury greater than the injury that might reasonably result from her own conduct.' " *Harris*, 343 Ill. App. 3d at 1022, 798 N.E.2d at 1265-66, quoting *People v. Roberson*, 335 Ill. App. 3d 798, 801, 780 N.E.2d 1144, 1147 (2002), applying 720 ILCS 5/7—13 (West 2000).

Moreover, there have been several other instances where courts have upheld the imposition of a "knowing" mental state without a criminal purpose or more culpable mental state. See *People v. Farmer*, 165 Ill. 2d 194, 650 N.E.2d 1006 (1995) (court upheld statute preventing persons from knowingly and without authority bringing contraband into a penal institution regardless of intent where it posed a threat to the safety of inmates and personnel alike and would impede the effective operation of penal institutions); *Marin*, 342 Ill. App. 3d at 724, 795 N.E.2d at 960 (court upheld statute preventing persons from knowingly carrying a loaded weapon because access to a weapon can lead to criminal behavior despite a lack of criminal intent); *People v. Theonnes*, 334 Ill. App. 3d 320, 777 N.E.2d 1075 (2002) (court upheld statute preventing persons from knowingly and falsely representing themselves to be peace officers despite lack of criminal intent where act was in itself potentially dangerous). Accordingly, for all of the foregoing reasons, we find no substantive due process violation.

■ Lastly, defendant contends that his trial counsel was ineffective for eliciting incriminating testimony from him which assisted the prosecution's case and prompted the court to find defendant guilty. To prevail on a claim of ineffective assistance of counsel a defendant must satisfy the two-pronged test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Trial counsel has not performed ineffectively unless counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would

have been different. *Strickland,* 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

During defendant's direct examination at his bench trial, the following colloquy ensued:

"Q. And after you had that other legitimate resident alien card stolen from you, what did you do to try to get a card?

A. I just went down to, you know, where they—you could buy them on the street, you know. And I—you know, I just bought one, you know, just to get it because—

Q. Why did you go buy a fake card?

A. Just to carry, you know, stating that I got an ID so I can get into clubs and that."

During cross-examination by the State, defendant testified that he had purchased a fake identification card, but forgot that he had it in his wallet. After defendant stated that he forgot about the fake card in his wallet, the trial judge asked several questions of defendant:

"Q. Sir, why did you go out and purchase this card?

A. Just to get into clubs, sir.

Q. And how often were you going to clubs?

A. Like—say, like on the weekends, Fridays. I guess Friday, Saturday. It depends when we went.

Q. In a month, how many times would you go into a club? Three?

A. Say, like, about two or three times.

Q. A month?

A. Yeah.

Q. Okay. It works for me. That's enough for me."

Then, in closing argument, defense counsel commented that defendant used the card to enter bars but was not deceiving anyone about his age because he was 27 years old.

■ Defendant argues that there could be no trial strategy for counsel to establish that defendant used the card but had no intent to defraud because the prosecution only needed to prove mere knowing possession. Thus, eliciting the incriminating statement was ineffective representation. We reject defendant's argument. Initially, defendant cannot establish prejudice because there was other overwhelming evidence with which to establish defendant's guilt. He testified that he purchased a fake card and knew when he had it in his pocket that it was fake. When the police asked him if he knew it was fake, he responded that he was aware that it was fake. Accordingly, it cannot be said that the outcome of the proceedings would have been different had defense counsel not elicited the reason for using the fraudulent identification card.

Additionally, the trial judge specifically stated that his reason for asking the question about going into nightclubs and the frequency of the visits was

"to resolve the question in [his] mind of whether this gentlemen could have in his wallet this illegally gained card and forget about it. *** If you are using the card with that frequency, it seems to me that you have to be aware that I am in possession of and using this fraudulent card."

Thus, the trial judge's question was raised in response to defendant's argument that he forgot he had the card in his wallet and was not prompted by defense counsel's inquiry into the purpose for which he used the card. Consequently, defendant's ineffective assistance of counsel argument must fail.

Accordingly, for the foregoing reasons, we affirm defendant's conviction, vacate his sentence and remand for resentencing consistent with our opinion.

Affirmed in part; vacated and remanded in part.

QUINN, P.J., and HARTMAN, J., concur.